## ERASTUS F. HEWITT'S APPEAL FROM PROBATE.

New London Co., Oct. T., 1889. ANDREWS, C. J., CARPENTER, LOOMIS, BEARDSLEY and J. M. HALL, JS.

A testator constituted the residue of his property, which was nearly all personal, a fund, the income from which was to be divided into as many parts as he should leave nephews and nieces, or their representatives, living at his death, and one part paid to each during life; with a gift over of each share of the principal upon the death of the person having the life use of it. The testator was domiciled within the probate district of Ledyard and the probate court of that district assumed jurisdiction of the estate for the purpose of its settlement. The executor lived within the probate district of Norwich, and had the personal property at his place of residence. He had settled his administration account, but no distribution or other division of the property had been made. No trustee was appointed by the will and the executor had not been appointed trustee by the court. Most of the nephews and nieces mentioned in the will resided out of the state and several of them in the state of Pennsylvania. *A*, who had been appointed by a court in that state a trustee of the property of those residing there, applied to the probate court of the Norwich district, under Gen. Statutes, § 497, for an order giving him the custody of the portions of the property of which his wards had the life use, making the executor a respondent. Such an order was made and the executor appealed from it to the Superior Court, which court affirmed the order of the probate court. On an appeal from this judgment by the executor, it was held—

1. That the executor's liability on his administration bond if he complied with the order, and his liability to a suit by *A* if he refused to comply with it, gave him a sufficient interest in the matter to enable him to appeal from the probate order.

2. That the will intended a single trust, to be managed as such, and the income from it divided among the beneficiaries, and not as many different trusts as there were separate beneficiaries.

3. That the estate being legally in settlement in the probate court of the Ledyard district, and not having been divided by distribution or otherwise, that court alone had jurisdiction over an application by a foreign trustee for an order for possession of portions of the property.

4. That the fact that the executor resided within the probate district of Norwich, and had the personal property in his possession there, did not give the probate court of that district jurisdiction.

5. That it was the duty of the Ledyard probate court to keep the property within its control until the time came for final distribution.

[Argued October 15th—decided October 30th, 1889.]

APPEAL from a decree of the court of probate for the district of Norwich, appointing the appellee trustee of certain personal property, in which persons not resident in the state had a life interest, and authorizing the transfer of such property by the appellant, who as executor had the property in his custody, to the trustee, under Gen. Statutes, § 497; brought to the Superior Court in New London County, and heard before *F. B. Hall, J.* Facts found and probate decree affirmed, and appeal by the original appellant. The case is fully stated in the opinion.

*G. Greene, Jr.*, and *C. F. Thayer*, for the appellant.

1. The executor has an interest qualifying him to appeal. Though not named in the will as trustee, yet his trust as executor required him to protect the rights of the legatees. The court of probate for the Ledyard district might have appointed a trustee under Gen. Statutes, § 491, but there was no necessity for it. The executor might properly perform, as he did, the duties of a trustee, and for any failure of duty would have been liable on his bond as executor. Schouler on Exrs., §§ 238–241; *Sanford* v. *Gilman*, 44 Conn., 461. He is by his bond to "well and truly administer the estate according to law," and the will is the law of the estate. *Pease* v. *Phelps*, 10 Conn., 62; *Moore* v. *Holmes*, 32 id., 553; *Rhodes* v. *Seymour*, 36 id., 1; *Sanford* v. *Gilman, supra.* The mere settlement of his administration account does not exhaust his powers. *Davis* v. *Weed*, 44 Conn., 569. Under Gen. Statutes, § 559, it was his duty to hold this property until a bond was given by the life tenant in our probate court. *Sanford* v. *Gilman, supra.* The case of *Security Co.* v. *Hardenburgh*, 53 Conn., 169, shows that as late as 1885, a non-resident life tenant could not get possession of the property in which the life estate existed without giving bonds in this state. The only statute subsequent to this, under which it is claimed that the life tenant can remove the property without such bond, is Gen. Statutes, § 497. As such removal was contrary to the intention of the testator, it was the executor's duty to appeal from

the decree. If he had paid over the trust funds to the foreign trustee, under the order of the probate court, and such funds had not been forthcoming for the executory devisees on the death of any life tenant childless, the order of the court would have been no protection to him if it should be the fact that this statute gives the probate court no jurisdiction. Section 445 protects executors paying under the order of a probate court of competent jurisdiction only. The executor was under no obligation to risk being obliged to pay a second time.

2. The probate court had no jurisdiction to make the decree. The Norwich court is not "the court of probate in which the principal part of the estate in this state is." Property can only be said to be in a court when it has exercised jurisdiction over it, or at least has the legal right to do so. The testator died domiciled in the district of Ledyard, in which district the probate court was and is exercising jurisdiction over this property. Until the application was made in this matter to the probate court for the Norwich district, that court had never exercised or claimed any jurisdiction over any portion of the estate. The different language of this statute from that of section 467 is noticeable. The former says—"the court of probate in which the principal part of such estate is;" the latter—"the court of probate *of the district* in which the principal part of such estate is." Even if it be held that the language of the former means the court of the district in which the property is, the court for the district of Ledyard should have been applied to. The real property was all in Ledyard, and the personalty, being in charge of the executor, was still, in the eye of the law, in the district of the testator's domicile; that is in the district of Ledyard.

*D. G. Perkins*, for the appellee.

1. The character of the proceedings. The legislative power of the state has provided, (Gen. Statutes, § 497,) as an act of interstate comity, that a certain class of nonresident *cestuis que trust*, whose trust property is located in

VOL. LVIII.—15

this state, may procure the appointment of their own trustee, under the control of their own local courts, and that the trustee so appointed, acting for them, may apply to the court of probate in this state "in which the principal part of the property is," for the possession of the property; and that the court, upon proof of his proper appointment, shall appoint him such trustee and authorize the person holding the property to deliver it to him. Full power is given him to demand, sue for, recover and remove the property from the state. This is such an application, and an executor holding the trust property ready for distribution according to the will, to whom notice of the application was given, saw fit to appear; and when the application was granted, took the present appeal to the Superior Court as a party aggrieved.

2. The appellant has no *legal right* which is in any way affected by the decree appointing a trustee, and therefore is not aggrieved within the meaning of the statute, and has no right of appeal. To be "aggrieved" is to have a legal right the infringement of which by the decree complained of will cause pecuniary injury. *Norton's Appeal from Probate,* 46 Conn., 527; *Dickerson's Appeal from Probate,* 55 id., 223. The appellant seeks to justify his appeal on three grounds:—*First.* Because he is the person to whom the court ordered notice to be given under the statute. The object of the statute is simply to give notice to the person having the property in his possession. His only interest is to deliver the property to a legally appointed trustee. The decree authorizes, but does not compel him to deliver it. He can await a suit, and test the right in that. The only person interested in the property itself is the *cestui que trust,* who has procured the appointment of the trustee who makes the application, acting in his behalf. The other *cestuis que trust* have no interest, because their property is in no way affected, except it be, as claimed, by the division of the property, which is the fault of the law and cannot be the subject of complaint. If so, it would give them and not the executor a right of appeal. *Second.* Because he holds

the property as trustee. This is false in fact. The finding expressly declares that he is not trustee, either by the will or by appointment of the probate court. He cannot be created a trustee by implication from certain acts of the probate court in ordering him as executor to distribute the income of the fund. He acted solely as executor, and is subject to the court only in that capacity. Courts of probate can appoint trustees only as provided in Gen. Statutes, § 491. And he must give a bond as trustee, which has not been done here. He is liable solely as executor on his bond, and must be held to have acted as such. His sureties on his bond as executor would not be liable for his acts as trustee if he had been appointed. *Sanford* v. *Gilman*, 44 Conn., 461. *Third.* Because he holds the property as executor. So far as his duty as executor is concerned the estate is settled, all charges paid, his final account rendered, and this property shown to be in his hands for distribution under the will or by law. The Ledyard probate court could have appointed a trustee under section 491, and the executor would have been bound to deliver the property to him. Could he have appealed from the appointment of such a trustee? The answer is plain; and yet he has as executor no other interest in the appointment of this foreign trustee. Each is the appointment of a trustee as authorized by statute; they differ only in details; his rights and duties as executor are the same in one case as in the other. The act of the probate court simply " appoints the trustee and authorizes him to deliver the property." It does not compel him. If he delivers the property he is protected under Gen. Statutes, § 115. The court of probate by statute has jurisdiction of the subject matter. The executor cannot be held to inquire whether, through defect in the evidence, the court erred in exercising jurisdiction in the particular case. But if the court had no jurisdiction the whole proceeding is void, and the executor should not be allowed to appeal from a court which had no jurisdiction to another court necessarily without jurisdiction, simply to see the case erased from the docket. *Olmstead's Appeal from Probate*, 43 Conn.,

110.   Whether valid or void the executor is bound in no·way by the appointment of the trustee, and can await, if he chooses, the action of the trustee to recover the property, and thus determine the validity of the court's action and protect himself.   He ought not to have an appeal and also defend an action.   If he appeals, he will charge the expense to the entire property of the estate of John Newton, which has no possible interest in this appeal.   The conclusion is, that he is maintaining an appeal and promoting litigation in a matter in the decision of which he has no pecuniary interest.   The appeal should be dismissed.

3.   The appellant claims, under the statute, that the Norwich probate court had no jurisdiction, because the estate was not in settlement in that court.   It is conceded that the principal part of the estate is in the district of Norwich, and that is all that the statute requires.   The intention of the legislature is plain; the word " estate " is equivalent to "property," and in referring to its location it is apparent that the district is meant, although the words " of the district" do not occur after the word " probate."   It surely cannot mean, as claimed, " the court in which the estate is in settlement;" if so, why the expression " the principal part of such estate," for the principal part cannot very well be in settlement in one court of probate and the lesser part in another.   The apparent and reasonable construction of the language is that the *situs* of the property in the district is intended.

4. The facts bring the case within the statute.   Five *cestuis que trust* are children and three are grandchildren of the sisters named in the will; all reside in Pennsylvania, and all have children who reside there.   Under the will the eight *cestuis que trust* are the owners of a life estate, six in one fourteenth each, and two in one twenty-eighth each of the trust estate.   To own is to have a legal right to the exclusive possession.   Ownership here refers to a life use or income during life.   Upon the death of the life tenants such share is given to the children of such life tenant absolutely.   The children have a vested interest in the remainder.

Under the statute children must "be entitled" to the remainder on the termination of the life estate; to be "entitled" is to have a legal right or claim. These children have such right or claim to the remainder, subject to be defeated, as are the rights of us all to property, only by death. They come within the meaning of the statute then. It is said the trust is entire and indivisible. The testator clearly contemplates division; "the residue shall be divided into as many equal parts, etc.—and one of said shares set apart for the use of each, and the income of each of said shares paid over," etc. There is nothing in the will to prohibit division, and the statute clearly grants the right. The *cestui que trust* who applies is alone interested in the management of his own fund, and if division results in any increased expense to the remaining *cestuis que trust* it is. due to the machinery provided by the law for the fulfilment of the trust; it is a matter over which the testator had no control. This is a proceeding to have a trustee appointed and not to have property delivered to the *cestui que trust*. The court, before the statute of 1887, could appoint a non-resident a trustee. The statute simply authorizes the court to confirm the appointment of a non-resident appointed by a court of another state, and makes the record evidence of his appointment and qualifications. The testator in his will, and the probate court of Ledyard under the will, made no appointment of a trustee, so that there is no constitutional question on the ground that the appointment of this trustee interferes with the vested rights of a trustee already appointed.

ANDREWS, C. J. Miller S. Allen preferred his application to the probate court in the district of Norwich on the 23d day of June, 1887. He described himself to be of Montrose, Susquehanna county and state of Pennsylvania, alleged that he was the trustee duly appointed by the proper court in that state for certain persons named in the application, and asked that a portion of the estate of John J. Newton be transferred to him as such trustee. Erastus Hewitt, the

executor of the will of Mr. Newton, was made a respondent to the application. The court of probate in the Norwich district made an order authorizing such a transfer to be made. From that order Mr. Hewitt appealed to the Superior Court for New London county where the order of the probate court was affirmed. Mr. Hewitt now appeals to this court.

At the outset it is objected that Mr. Hewitt has no such interest in the matter as authorized him to take any appeal from the order of the probate court. We think he was so affected by the decree appealed from that he had good right to take the appeal. On the one hand the liability on his administration bond to which he might be subjected if he complied with the order, and on the other hand the liability to a suit by the trustee Allen if he refused to comply with it, is an interest such that it is very clear he might be aggrieved.

The finding shows that John J. Newton died on the 9th day of September, 1883, resident and domiciled in the town and probate district of Ledyard. He left a will the third and fourth paragraphs of which are as follows:

" *Third.* I give, devise and bequeath the use and income of all the rest and residue of my estate to the children of my two deceased sisters, Sally Smith, (who was the wife of Latham A. Smith), and Mary L. Hempstead, (who was the wife of Gurdon Hempstead), and in case any child of either of my said sisters has died leaving children, the portion of said income which would go to such child of my sisters shall be paid over to his or her children; and said residue shall be divided into as many equal parts as there shall be of my said nephews and nieces, counting those who shall be living at my decease and those who shall have died leaving children, and one of said shares set apart for the use of each of said nephews and nieces living and for the use of the representatives of each of said nephews and nieces who shall have died as aforesaid leaving children, and the income of each of said shares paid over to the persons entitled thereto during life.

" *Fourth.* Upon the death of the nephew or niece or grand-nephews and grand-nieces entitled to any of the shares afore-

said, such share shall be delivered and paid over, and I give and devise and bequeath the same, to the children of such nephew or niece, grand-nephew or grand-niece, share and share alike, and in case there be no such children it shall be divided among the other nephews and nieces, grand-nephews and grand-nieces in proportion to their respective shares and the children of such nephews and nieces, grand-nephews and grand-nieces, where any share shall have been distributed to such children."

The will was duly proved and approved in the probate court in the district of Ledyard. Erastus Hewitt of Preston was named therein as executor. He duly qualified as such and proceeded in the settlement of the estate. All the known debts are paid, the administration account has been settled, and the estate is ready for distribution as soon as by the terms of the will it can properly be done. The property of the estate consists mainly of personalty. No trustee was named in the will, nor has one been appointed by the probate court, to hold such property during the continuance of the life estates therein created by the will; nor was there any direction in the will that any life legatee should have the possession of it. Mr. Hewitt has annually paid over the income of the property to the beneficiaries under the will in accordance with the order of the court of probate in the district of Ledyard.

Sally Smith, Mrs. Newton's sister, mentioned in the will, had ten children. Mary L. Hempsted, the other sister, had five children. The persons for whom Miller S. Allen brought his application are a part of the children of said Sally Smith. They reside in the state of Pennsylvania. It does not appear that all of them have children; and it does appear that some of the children of one or more of them reside in states other than Pennsylvania. None of the children of Mrs. Hempsted reside in that state. Three of the children of Sally Smith have died since the death of Mr. Newton; two of them leaving children and one leaving no child.

The town of Preston, where Mr. Hewitt resides, is in the probate district of Norwich. The personal property belong

ing to the estate is in his custody and possession, except so far as it has been paid over on orders of the court of probate.

In the settlement of a solvent testate estate the will is the law, and so long as any part of the property of such an estate remains in the estate, *as an estate*, unsevered by a distribution or otherwise, no court of probate other than the one " having cognizance of the will " can make any lawful order or decree concerning its custody or disposition. Nor can that court of probate make any order concerning the property that is not according to the provisions of the will.

An examination of the will of Mr. Newton shows that he intended the residue of his estate to be a fund, the income of which should be divided into as many parts as he should have nephews and nieces, or their representatives, (children of his sisters who are named,) living at his death, and that one of these parts should be paid to each of these nephews and nieces or their representatives, during their lives; and that the residue itself, the principal from which the income was derived, should be divided into as many parts as there should be nephews and nieces of his who at their own death should leave surviving children. The number of the persons to whom the income is to be paid, and so the number of parts into which the income was to be divided, was fixed at the death of Mr. Newton. But the number of parts into which the residue itself is to be divided cannot be certainly known until the death of the last life legatee. One of his nieces has already died without children; others may die leaving no child; and as it may so happen that the life legatee who shall live the longest may leave no surviving child, it cannot, until that event happens, be known how many persons there will be who are entitled to a distributive share in the principal of the residue. Nor can it until that time be known with certainty who the distributees are. And when distribution is to be made the persons who are entitled to take, as well as the share which each is entitled to receive, can only be ascertained by the court of probate in the district of Ledyard, for the reason that that court only has cognizance of the will.

Till the time for distribution comes it is necessary that the whole residue be kept within the control of that court, to the end that it may then be distributed in a proper manner and to the rightful persons, and so that it may be distributed as a single fund, or, if there should be partial distributions, that these may be made as parts of one entire fund.

These considerations show clearly that the will contemplates but one trust for the entire residue of the estate, and not as many different trusts as there were nephews and nieces ; and that the residue itself is not to be divided during the continuance of any life estate, any further than may be necessary to ascertain the portion of the income to be paid to each life legatee.

The application was claimed to be brought pursuant to section 497 of the General Statutes, and it was made to the probate court in the district of Norwich, upon the averment that the property was principally in that probate district. The facts, however, show that the property was in the district of Norwich in no other way than that it was and is in the custody of the executor, Mr. Hewitt, who resides in that district. The estate of John J. Newton being in settlement in the court of probate in the district of Ledyard, its legal situs is in that district. The accidental circumstance that the executor resides in the district of Norwich and that the nominal location of the property is there, cannot operate to give the probate court in the latter district any jurisdiction over it. The title which Mr. Hewitt has to the personal property of his testator does not make it his property in any such sense as to impress it with the situs of his residence. It was decided two hundred years ago in *Cole* v. *Knight*, 3 Mod., 278, that "when an executor hath goods of his testator and also other goods of his own, and then grants *omnia bona sua*, the goods which he hath as executor do not pass because they are not *bona sua*," and such has been the law ever since. *Farmer's & Mechanic's Bank* v. *Brewer*, 27 Conn., 601. It follows that the decree appealed from is wholly void for the reason that the court of probate in Norwich had no jurisdic-

tion over any part of the property belonging to the estate of Mr. Newton.

And further; it is quite difficult to see how such an order as was made in this case could be sustained, èven if it had been made by the probate court in Ledyard. It undertakes to divide the residue of the estate during the continuance of the life interests therein in a way altogether inadmissible. We have already shown that the residue constitutes but one trust fund instead of a number of trust funds. Obviously this residue is a single fund or it must be divided into as many trust funds as there were nephews and nieces. It cannot be partly one and partly the other. No argument whatever can be made to show that this residue, if to be divided at all, can be divided into any less number of parts that there are life legatees. No number of these legatees greater than one and less than all can unite and have it divided in any other way. To do so would be to disregard what seems to be the plain intent of the will.

There is error in the judgment appealed from and it is reversed.

In this opinion the other judges concurred.