SAMUEL S. HURD, TRUSTEE, *vs.* DANIEL B. SHELTON ET AL.

Third Judicial District, New Haven, June Term, 1894. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In construing wills inartificially drawn, the context may give to certain words a meaning which they do not ordinarily or properly possess.

A testator by his will gave to his son *B* all his property, but placed it in the hands of trustees until he should perform certain specified "stipulations to his brother *J*," when "the will" was to become absolute in *B*. *Held* that by "stipulations" the testator intended the obligations imposed upon *B* for the benefit of *J*, and that by "the will" he intended the devise and bequest to *B*. *Held* also, that so long as *B* regularly discharged these obligations towards *J* the whole net income of the estate should be paid over annually by the trustees to him, *B*, and to his executors and administrators; that should default of such obligations ever be made, *J* would have an equitable lien upon the trust estate to secure the benefits intended by the testator; and that should such default continue until *J*'s decease, the trust fund would then become intestate estate of the testator, *B*'s estate being defeated by breach of the condition subsequent.

If a testator devises real estate owned by *B* to *J* and gives *B* a legacy, this casts upon *B* the necessity of electing whether to accept or reject the legacy with its attendant burden. *B* cannot claim the legacy unless he allows *J* the benefit of the devise.

A bequest conditioned on payment of an annuity may be claimed although no money was paid, where necessaries of equal or greater value are annually furnished and accepted by the annuitant in lieu of the money.

The general scheme of a will is not to be defeated by a concluding clause indicating a different and inconsistent intention, but expressed in such vague and dubious terms that its meaning cannot be gathered with reasonable certainty.

[Submitted on briefs June 5th—decided July 9th, 1894.]

SUIT for the construction of the will of Elisha Shelton,

brought by the trustee thereunder to the Superior Court for Fairfield County ; facts agreed upon and case reserved by the court, *Thayer, J.*, for the advice of this court.

*William H. Williams*, for the plaintiff.

No counsel appeared for the defendants.

BALDWIN, J. In 1868, Elisha Shelton died, and his will was admitted to probate. The disposing portion of it reads as follows : " To my son, Beach Shelton, I give all my estate, both real and personal, which is to go into the hands of trustees, viz : Ambrose Shelton and David N. Lane until he performs certain stipulations to his brother James Shelton, accepted as portion in full the will to be absolute in my son Beach Shelton, my wish is that my son Beach pay my son James one hundred and fifty dollars ($150.00) a year for life and give him the best bed I leave his yearly wood standing all my apparel and a life lease of one quarter of the dwelling house, where I now live including one quarter of the well the old garden and land for a wood pile and all the necessary passages there connected a settlement to be made between the said brothers without going through a court of law let the property which is or ought to be about twenty-four hundred dollars remain in the hands of the said trustees be paid out to my most needy heirs."

His sons Beach and James were his sole heirs at law. He also left a widow who died many years since. The dwelling-house in which he lived, and the well and old garden mentioned in the will, belonged to his son Beach. His property consisted of a few acres of land worth $176, and personal estate (after payment of debts and charges) of the value of about $2,700, all of which, upon the settlement of the estate, in 1869, went into the possession of one of the trustees, the other renouncing the trust, and is now in the possession of the plaintiff. He and his predecessor in the trust, being in doubt as to their rights and duties, have accumulated the

Hurd, Trustee, *v.* Shelton et al.

entire net income of the estate, and the trust fund now amounts to over $8,000.

Beach Shelton died intestate in 1893. As long as he lived, he furnished his brother, James, every year, apparel and support amounting in value to over $150, and allowed him to occupy and use such part of the dwelling-house mentioned in the will as he desired, together with the well, old garden, land for a wood pile, and all necessary passages connected with them. He always claimed that the trustee was bound to pay over $150 a year to his brother, James. The administrator of the estate of Beach Shelton has made no payments to James Shelton, and claims that the trustee should pay said annuity to the latter, and turn over all accumulations of the trust fund to the estate or representatives of his intestate.

The will in question begins by making an unqualified gift of all the testator's estate to Beach Shelton. It then adds that this is to go into the hands of certain designated trustees, " until he performs certain stipulations to his brother James Shelton, accepted as portion in full the will to be absolute in my son Beach Shelton." The testator's intent by this language, though confusedly and inaptly expressed, is reasonably clear. He contemplated the acceptance by his son and heir, James Shelton, of the provision he was about to make for him, as in full of his portion of the estate. This provision he refers to as " stipulations " to be performed by Beach Shelton, and until they are performed, the property left to Beach is to be held by the trustees. When performed, the devise and bequest to Beach, which he describes as " the will," are to be " absolute in " him.

The " stipulations " in favor of James are then thus set forth : " my wish is that my son Beach pay my son James one hundred and fifty dollars ($150.00) a year for life and give him the best bed I leave his yearly wood standing all my apparel and a life lease of one quarter of the dwelling-house, where I now live including one quarter of the well the old garden and land for a wood pile and all the necessary passages there connected a settlement to be made be-

Hurd, Trustee, v. Shelton et al.

tween the said brothers without going through a court of law."

It would appear from the agreed statement, upon which this reservation is based, that the two brothers must have come to such an amicable settlement as to the meaning and effect to be given, as between them, to this expression of their father's wishes, as he desired. Beach did not pay James the stipulated annuity, but, instead of that, supplied him with apparel and support, every year, to an amount exceeding $150 in value, and also gave him the use of so much of his own house and its appurtenances, as met the terms of the will to James' satisfaction.

This course of conduct on the part of the two brothers is equivalent to an acceptance by each of the provisions of the will, and to due performance by Beach, as long as he lived, of all the obligations imposed upon him by the testator. The will, in effect, disposed of real estate belonging to Beach in favor of James, and it also gave a benefit to Beach. This cast upon him the necessity of electing whether or not to accept the benefit with its attendant burden. His election to accept, manifested by the parting with his own property for his brother's use, gave the dispositions of the will in his own favor full and immediate effect. It follows that the trustees should have paid over to Beach, at the close of each year, the net income for the year derived from the trust estate. The principal was to remain in their hands during the life of James, for until his decease the obligations assumed by Beach could not be fully performed; but not the income, since they were to make no payments to James, nor was there any direction for accumulation, or any object to be gained by it, except an increase of a fund which was to come ultimately to Beach. The obligations which he assumed devolved upon his estate at his decease, as the condition upon which, on the decease of James, it can claim the principal fund. He had an absolute title to the accumulations of income, and a title to the principal which is defeasible, upon breach of a condition subsequent. Both these rights passed to his administrator, and, with them, the

corresponding duty to pay the annuity to James during his life, and allow him the use of the real estate described in the will, including the right to cut his necessary firewood.

It is not improbable that the concluding words of the will, having reference to a trust for the most needy of the testator's heirs, were intended to come into force, should the two brothers fail to agree to carry out the provisions previously made for their benefit. If so, as they did agree, the trust has become inoperative. We think, however, that if it was meant to be contingent upon some future event, such contingency is not stated with sufficient certainty; and, on the other hand, that it cannot fairly be construed as an absolute and independent disposition of the estate, since this would defeat the entire scheme of the will, the main intent of which plainly was to make suitable and definite provision for each of the sons.

The Superior Court is advised that the plaintiff is bound to pay to the administrator of the estate of Beach Shelton the entire net accumulations of income which were in the plaintiff's hands at the date of the decease of Beach Shelton, and that the net income thereafter accrued and to accrue will belong and be annually payable to such administrator, provided he and the widow and heirs of Beach Shelton continue to fulfill the obligations imposed upon said Beach Shelton in said will, as hereinbefore described; and that of the principal of said trust fund, the real estate is equitably vested in the widow and heirs of Beach Shelton, subject to said trust, and upon a condition subsequent for the performance of said obligations; and the personal estate is equitably vested in said administrator, subject to said trust, and upon a condition subsequent, for the performance of said obligations: and that upon the decease of James Shelton, if said conditions have been duly kept, said trust will cease, and said trust estate should by said trustee be paid and delivered to the widow and heirs or administrator of Beach Shelton, as above specified; but, if said conditions, in any year have been or shall be broken, then said James Shelton will have an equitable lien upon said trust fund remaining in the hands

of the plaintiff to the extent of his loss by such breach of condition; and that should said breach continue until the death of said James Shelton, then the trust fund remaining at such time in the hands of the plaintiff or his successors, will be intestate estate of said Elisha Shelton.

In this opinion the other judges concurred.