GEORGE S. WILLIS ET AL., TRUSTEE (ESTATE OF FRIEND A. RUSS) *v.* ELIZABETH G. HENDRY, EXECUTRIX, ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 9—decided December 5, 1940.

*William F. Healey,* for the plaintiffs.

*Joseph L. Melvin,* for the named defendant et al.

*Edward J. Donahue,* for the defendants Carrie A. Rice et als.

*Louis Weinstein,* for the defendants Ada S. Russ et als.

*Harold E. Drew,* for the defendant The Griffin Hospital et al.

MALTBIE, C. J. In this case the trustees under the will of Friend A. Russ are seeking its construction and advice as to their duties. The relevant portions of the will are summarized in the footnote.[1] In all, some

---

[1] Fourth article. The testator devises the house and premises owned by him in Greenwich to trustees to hold and permit his wife to occupy during her life if she so desires, "she paying all taxes thereon and upkeep thereof" or, if she so elects, to sell the premises, invest the proceeds and pay her the income during her life. At her death, the principal of the trust fund or the property is to become a part of the residuary estate.

Ninth article. He gives all the residue of his estate to trustees to invest and "to pay the income as follows": The remainder of the article is divided into lettered subdivisions.

A. He gives to each of four women, a sister, a cousin, a niece, and another, "an income" for life, the amount being different in each case and the largest, $1250; he provides that upon the death of each of them "the principal of the fund so held in Trust, the income of which such beneficiary was entitled to receive, shall remain part of my residuary estate and be disposed of in accordance with the following provisions of this my Will"; and he states that the foregoing "bequests" "are predicated" on the fact that the "entire

thirty-seven questions are propounded in the reservation and many of these are predicated upon fu-

net income received by my trustees annually from the entire rest, residue and remainder of my estate" should be at least $55,000, and provides that should "the total net income of the entire rest, residue and remainder of my estate" be less than that sum "in any year," the income to be paid each beneficiary should be reduced proportionately.

B. He gives to his wife during her life thirty per cent of the "entire net income, but in no event more than twenty-five thousand ($25,000) dollars per annum"; and he directs that at her death "the principal fund so held in trust, the income of which my wife is entitled to receive, shall remain a part of my residuary estate."

C. He gives to his son during his life an annual income of thirty per cent "of the entire net income or such part thereof as my trustees hereinafter named may deem necessary for the support and maintenance of my son but in no event more than twenty-five thousand ($25,000) dollars per annum, payable semi-annually and the remainder of the income which, during any calendar year, my trustees shall not deem necessary for the support of my son shall be retained by the trustees and accumulated for my said son during his natural life and my said trustees are authorized to pay all or any part of said accumulated income to my said son if they deem the same necessary for his support. At the time of the death of my son, any accumulated income shall become part of the principal of the trust funds held in trust under this my Will." Upon the death of the son or upon that of the testator, if the son die first, the trustees are directed to pay two-fifths of the income which the son would have been entitled to receive to his wife, if living with him at the time of "his" death; upon the death of the wife the income which she would have been entitled to receive, had she lived, is to be paid to the lawful issue of the son for a period of twenty-one years in equal shares and at the expiration of that period the "principal of the trust fund, the income of which the wife of my son would have been entitled to receive," is to be paid to the lawful issue of his son then surviving or if there are no lawful issue "the principal of the trust fund" is to be added to and form a part of "the trust created by the following Paragraph D of this my Will." Upon the death of the son, or that of the testator should the son die first, if the wife with whom he was living at the time of "my" death is surviving "the remaining three-fifths of the income, to which my son would have been entitled to receive had he survived me" is to be paid to the lawful issue of the son for a period of twenty-one years but if the son's wife is not living or is not living with him at the time of his death or if both predecease the testator the "entire net

ture contingencies which may never arise. Thus several questions are asked as to the right of the trus-

income to which my son would have been entitled to receive had he survived" is to be paid to the son's lawful issue for a period of twenty-one years and at its expiration "the principal of the trust fund, the income of which the issue of my said son were entitled to receive to the lawful issue of my son then surviving." If the son dies leaving no lawful issue but his wife with whom he was living at the time of his death survives both the son and the testator, upon the death of the last survivor of the two "the principal of the trust fund represented by three-fifths of the income which the issue of my son would be entitled to receive, if any such issue survive, shall be added to and form a part of the estate hereinafter created in Paragraph Ninth D of this my Will." If the son die leaving no lawful issue surviving and his wife does not survive the testator or him then "the principal of the trust fund, the entire income of which my son would have been entitled to receive" had he survived "shall be added to and form a part of the trust hereinafter created under Paragraph Ninth D of this my Will."

D. The testator gives to his daughter during her life "all such part of the entire remainder of said income (which income may from time to time be increased by the death of various legatees as herein provided) as my trustees hereinafter named may deem necessary for the support of my daughter," with similar provisions to those made as regards the income given to the son in subdivision C as to withholding income from her by the trustees, with a provision that at the death of the daughter any accumulation "shall be and become part of the principal of the trust funds held in trust under this my Will." Upon the death of the daughter, or if she die before the testator, upon his death, the trustees are directed to pay the income which she would have been entitled to receive, one-half to his granddaughter Mary and one-half to his granddaughter Jean, in each instance during her life, with a provision authorizing the trustees to retain any portion they might not deem necessary for the support of the granddaughter, such portion to be "retained by the trustees and accumulated for said grandchild during her natural life" but authorizing the trustees to pay all or any part of the accumulated income to the grandchild at any time they deem it necessary for her support, and, further, that at the death of the grandchild any accumulated income is to become "part of the principal of the trust funds held in trust under this my Will for such grandchild." Upon the death of Mary, if she survive the testator and his daughter or if she predecease the survivor of them, then upon the death of such survivor the trustees are directed to pay to her issue then surviving in equal shares "said one-half of the principal

tees to lease the premises referred to in the fourth article of the will, which the testator's wife is given

of the trust fund," the income of which Mary would have been entitled to receive had she survived but if she left no issue then surviving "said one-half of the principal" is to be paid as Mary may appoint by will or in failure of appointment "said one-half of the principal" is to be paid in equal shares to the United Hospital Fund of New York City and the Griffin Hospital of Derby or their successors, with a provision in the case of each that if "at the time of the distribution of the principal of the said trust funds" the institutions had dissolved or ceased to function without successors, there was to be a distribution to carry out the same charitable purposes of "the portion of said principal" which would otherwise go to them respectively. Upon the death of Jean if she survive the testator and his daughter, or if she predecease them upon the death of the survivor of them, a gift is made similar in all respects and in the same language as in the case of Mary. There is a further provision that if after the death of the testator's wife and daughter "the principal of the trust fund created by Subdivision D of paragraph 'Ninth' of this my Will" exceeds one million dollars the trustees are directed to set aside as a separate fund, the portion of such trust fund in excess of that sum but in no event more than two hundred thousand dollars, to be paid one-half to the United Hospital Fund and the other half to the Griffin Hospital, with a similar provision as in the previous gift to these institutions in the event they have dissolved or ceased to function and had no successors.

Eleventh article. "I hereby direct my Executors hereinafter named, to pay out of my estate, all transfer taxes or inheritance taxes that may be imposed upon any devise, legacy, or annuity herein contained, or any transfer thereof, and that the same shall not be chargeable to, or paid by any devisee, legatee or annuitant herein named, and the trustees' commissions and exepnses shall not be charges upon any of the annuities or bequests hereinbefore mentioned, but paid from my estate."

Twelfth article. The executors and trustees "while acting in the capacity of executors, and also in order to distribute any trust estate or part," are authorized to sell and convey any real estate and in case of a sale of any premises which may be set apart for any of said trusts, "the proceeds of such sale shall stand in the place of the premises sold as a part of the principal fund and property of said trust."

Thirteenth article. The testator provides that "in distributing my estate or in forming any of the several trust funds herein created" the executors and trustees shall have full power to make any division

the right to occupy but which, if she so elects in writing, are to be sold. She now occupies the premises and nothing in the record indicates that she does not intend to continue to do so. Several other questions concern the rights of the wife of the testator's son John under subdivision "C" of the ninth article; her rights are predicated upon her surviving his death, and whether she will survive or not of course cannot be known. It is not the function of this court to give advice as to contingencies which may never happen, where there is no apparent present need of so doing. *Russell* v. *Hartley*, 83 Conn. 654, 665, 78 Atl. 320; *Holmes* v. *Connecticut Trust & Safe Deposit Co.*, 92 Conn. 507, 512, 103 Atl. 640; *Gorham* v. *Gorham*, 99 Conn. 187, 195, 121 Atl. 349; *Foley* v. *Hastings*, 107 Conn. 9, 16, 139 Atl. 305; see *Moeller* v. *English*, 118 Conn. 509, 513, 173 Atl. 389. We shall, therefore, confine our consideration to such questions as are properly presented upon the statement of facts and as to which there appears some present need for their determination.

We are asked whether it is the duty of the trustees to insure the premises given to them in the fourth

she or he or they may deem advisable and may "establish said trust funds or make distribution" in money, securities, personal property or real estate, at valuations to be determined by them in the exercise of their best judgment and good faith, "and at such times as in their best judgment it is desirable so to do"; and the testator states his belief that they will use their best judgment in the distribution of my estate or "in forming any of the several trusts created at the same time."

Fourteenth article. The testator provides that "in making any division of my estate for the purpose of setting apart said trust shares, or in the distribution thereof," the executors and trustees shall have broad powers as to the way in which they shall divide the property.

Twentieth article. The testator directs the trustees to pay the income to which any beneficiary is entitled in "quarterly installments as nearly as possible."

article against loss by fire, and, if so, whether the premium should be apportioned between the widow and the remaindermen. It is the duty of the trustees to exercise that care and prudence which an ordinarily prudent person would who was entrusted with the management of like property for another. *Reiley* v. *Healey,* 122 Conn. 64, 71, 187 Atl. 661. It is today a general custom among prudent business men to insure buildings in their charge against loss by fire; and ordinarily it is the duty of trustees holding property for remaindermen to see that such provision is made. *Garvey* v. *Owens,* 12 N. Y. Supp. 349, 350; *Re Gamble,* 57 Ont. L. R. 504; Restatement, 1 Trusts, § 176; 2 Scott, Trusts, § 176; 3 Bogert, Trusts & Trustees, § 599. We are not informed of any facts in this case which would make inapplicable this rule. The premises are not to become a part of the residuary trust in the will until the widow dies, and, so long as she occupies them, the trustees are without any income from the property with which to pay such charges. The apparent intent of the testator was that the widow should bear all ordinary charges incident to the maintenance of the property so long as she lives on it, and the word "upkeep" is to be so construed. This case is not like *Central Hanover Bank & Trust Co.* v. *Nesbit,* 121 Conn. 682, 689, 186 Atl. 643, for there the trustees were specifically charged with the payment of insurance premiums as well as the ordinary expenses for "upkeep." In the absence of any facts taking the case out of the general rule, we advise that it is primarily the duty of the widow to insure the buildings; but if she fails to do so, the trustees should insure them and charge the premiums against her. Should the term of any policy run beyond the life of the widow, the portion of the premium representing the period thereafter would be a charge upon the trustees and

the widow's estate would be entitled to reimbursement to that extent.

Most of the questions propounded arise under the ninth article of the will, and outstanding among them is the question whether the executors and trustees should set up separate trust funds out of the proceeds of each of which the gifts of income should be paid. The provisions of this article make it obvious that the testator was thinking primarily in terms of income. It is only when the specific gifts of income can no longer operate that his mind appears to have turned to the disposition of the fund or funds from which that income is to be derived. He clearly did not think through the method by which this purpose was to be accomplished. He undoubtedly had a more or less indefinite thought that the residuary estate should be divided into separate parts, with a view to producing the gifts of income he made to each of his beneficiaries. But it is noticeable that nowhere in this article is there any express direction that the executors or trustees shall set up separate trusts from which the income is to be paid; it is noteworthy that, in making the gifts to his wife and son, it is 30 per cent of the entire income which he gives, not the income of 30 per cent of the estate; and there are provisions which indicate that the thought he had was at best unformed. He clearly did not vizualize certain results not consonant with his dominant purpose which might follow from a division of his estate into separate funds. Thus in the case of the gifts of income in subdivision "A" there can be no doubt that the testator meant that each of the persons named should get each year the exact sum given them, subject only to a possible reduction in the event "that the income of the entire estate should fall below $55,000." Yet it may be if a separate fund were created from the income of which each of

the payments was to be made, a fall in the income of the fund might prevent full payment to the beneficiary, and, on the other hand, if the income of such fund should exceed the amount of the payment fixed, there is no provision in the will for the disposition of that excess; and in the case of the gifts to the wife and son of 30 per cent of "the entire net income," the amount which they would receive from a separate fund set up for each would almost surely fluctuate from year to year and it would be extremely difficult, if not impossible, for the trustees to set apart at the settlement of the estate an amount which would produce the income to which each was entitled. In both these provisions if the income from the portion set apart to provide for these gifts exceeds the amounts given, no specific provision is made for the disposition of the excess and it would be left to pass under the gift of "the entire remainder of said income" to the daughter.

The provisions of the eleventh article, as to which we are asked some questions, are significant with reference to the matter we are discussing. In that article the testator directs his executors to pay from his estate all transfer or inheritance taxes which may be imposed upon any "devise, legacy or annuity herein contained" and provides that they are not to be payable to or paid by any "devisee, legatee or annuitant herein named," and, further, that the trustees' commissions and expenses shall not be charges upon any of the "annuities or bequests hereinbefore mentioned but paid from my estate." In the portion of the will preceding the ninth article, aside from provisions concerning the cancellation of sums owed to him by his son and daughter by the application of collateral which he held, he makes a few relatively small bequests, one to a nephew and the others to persons apparently not related to him. It is very unlikely that he would in-

tend to free these beneficiaries from the charges mentioned in the eleventh article but impose them upon the share of his estate which he gave to his wife, son and daughter. In determining whether the gifts to the "annuitants" should be reduced he speaks of the total "net income" of the estate, and similarly in the gifts to his widow and son he gives to each a percentage of the "entire net income." Again he expressly provides that the small "annuities" created by subdivision "A" of the ninth article should not bear those charges and it would not be natural for him expressly to exclude the small gifts to these "annuitants" but leave them to be met from the portion of his estate given to his wife, son and daughter. It is to be noted, also, that in subdivision "A" of the ninth article he refers to the "annuities" as "bequests." All the provisions by way of legacy or bequest before the ninth article would be at once payable and the commissions and expenses of the trustees under the trust, which may run on for many years, could not have been intended to be imposed upon them. Such commissions and charges would ordinarily be payable from income, not principal; *Bridgeport-City Trust Co.* v. *First National Bank & Trust Co.*, 124 Conn. 472, 200 Atl. 809; see General Statutes, Cum. Sup. 1939, § 1301e; and the use in this article of the words "paid from my estate" means no more than that they are charges against the estate as a whole rather than against any parts of or interests in it which are given to particular beneficiaries. Clearly his intention was that the expense of administering the trust should not fall directly on the gifts of income which he has made, but he meant that those charges should be paid from the income of the fund as a whole. The division of the residue of the estate into separate trusts from the incomes of which the gifts to the beneficiaries were to be made, would

mean that there would be no general estate left in the hands of the trustees against which their commissions and expenses could be charged.

There is a significant phrase in the fourth paragraph of subdivision "C" where he speaks of the principal of the trust fund "represented by three-fifths of the income." Moreover, in the provision of the thirteenth article, where he gives the executors and trustees a broad discretion in "distributing my estate or in forming any of the several trust funds herein created," he adds "at such times as in their best judgment it is desirable to do so," and this indicates that the formation of separate trusts may have been regarded by him as optional rather than imperative. If the trustees can preserve the residue as a single trust, separating from it, when the time to distribute any portion of the estate comes, such portion as would be "represented" by the share of income which the testator has given to a beneficiary, the difficulties we have suggested would be obviated. See *Gorham* v. *Gorham,* 99 Conn. 187, 194, 121 Atl. 349. The will as a whole indicates that there was, in the mind of the testator, a definite intent to make certain gifts of income and a somewhat unformed thought that his estate should be divided into several trusts, but to give effect to the latter might to some extent defeat the former. "It is a well known rule in the construction of wills, that where the testator shows a particular and also a general intent, which are inconsistent with each other, the general intent will be established and the particular one disregarded, if the will can fairly be so read, considered as a whole." *Walsh* v. *McCutcheon,* 71 Conn. 283, 286, 41 Atl. 813; *Hurd* v. *Shelton,* 64 Conn. 496, 500, 30 Atl. 766; *Pinney* v. *Newton,* 66 Conn. 141, 152, 33 Atl. 591; *Lepard* v. *Clapp,* 80 Conn. 29, 32, 66 Atl. 780. The dominant intent of the testator should be

given effect, and this requires that the residue be held as a single trust. *Bell* v. *Towner*, 55 Conn. 364, 11 Atl. 185; *Hewitt's Appeal*, 58 Conn. 223, 232, 20 Atl. 453.

The testator's daughter Helene having died and her daughter Mary having predeceased her, leaving no issue and not having exercised the power of appointment given her as to the share of the estate represented by the income provided for her, the right to the share of the residue represented by the income which the granddaughter would have received had she survived the daughter was vested in the United Hospital Fund and the Griffin Hospital. *Johnson* v. *Webber*, 65 Conn. 501, 514, 33 Atl. 506. The question arises whether they are entitled to immediate distribution of this portion of the principal of the fund. Basing their position upon the setting up of separate trusts, they claim an immediate distribution of only so much as will leave in the trust under subdivision "D" a fund sufficiently large to pay one-half the gifts of income in subdivision "A," but our conclusion that separate trusts should not be established removes the basis of that claim. The testator clearly contemplated that the Hospital Fund and the Hospital might become entitled to the shares of the principal represented by the gifts of income given to his granddaughters even as early as his own death because as to each he expressly provides that if the granddaughter predeceased himself and his daughter, then upon the death of the survivor of them the Hospital Fund and the Hospital should take. This, to be sure, would only happen after his daughter had died, and it may not have occurred to him that a distribution at his death or that of his daughter might seriously affect the amount of income paid under other provisions of the ninth article. However, this cannot change a

clearly expressed intent in the will. *Moeller* v. *Kautz,*
112 Conn. 481, 487, 152 Atl. 886; *New Britain Trust
Co.* v. *Stoddard,* 120 Conn. 123, 126, 179 Atl. 642;
*Hills* v. *Travelers Bank & Trust Co.,* 125 Conn. 640,
646, 7 Atl. (2d) 652. The language of the will before
us is clear and precise: if the contingency in question
occurs, "then, I direct my trustees to pay" the share
to the Hospital Fund and the Hospital. This is virtu-
ally the same language he uses in the case of other
final distributions of any part of the principal of the
fund and it is in sharp distinction to all the gifts of
income to be effective before the time when such
distributions are to be made. Any inference that
might be drawn from the use of the phrases "entire
net income received by my trustees annually from"
or "the total net income of" and "the rest, residue
and remainder of my estate," in subdivision "A" and
"the entire net income" of my estate in subdivisions
"B" and "C" cannot overcome the clear language of
the gift to the Hospital Fund and the Hospital. The
only possible conclusion is that they are entitled to
immediate payment of the share represented by the
gift of income to Mary.

The Hospital Fund and the Hospital cannot be
charged with the payment to the beneficiaries of the
trust of income received upon the amounts so dis-
tributed, for that would clearly derogate from the
nature of the gifts which the clear intent of the testator
expressed in the will makes absolute. The present dis-
tribution of a portion of the principal will, however,
not only decrease the amount of the income available
for payments to the beneficiaries but would also, unless
proper provision is made, directly affect the basis upon
which the amount to be paid to the "annuitants" and
the widow and son is to be determined. In making the
provisions for these legacies, the testator clearly had in

mind that the entire residue of his estate would continue in the trust and planned his scheme for the distribution of income accordingly. The relative amounts to be paid those who are to receive the income should not be affected by the present distribution of a portion of the fund. In order to give proper effect to the provision that if the total net income from the estate is not at least $55,000 the gifts to the "annuitants" should be reduced and in order to determine what is properly to be regarded as 30 per cent of the net income to be distributed to the widow and to the son, it is necessary that there be added to the income actually received from the estate after the distribution to the Hospital Fund and the Hospital a sum representing the income which would have been received had the portion distributed been retained as a part of the trust, and that the income of the fund be regarded as the total of the amount actually earned by the portion remaining and this additional sum. The amount of the latter should be determined by ascertaining the rate of income upon the portion of the fund remaining in the trust immediately after the distribution to the Hospital Fund and the Hospital, which would produce the income actually earned by the fund left in the trust and by applying that rate to the portion of the fund distributed as of that date. From the amount of the total income as thus ascertained should be deducted the actual charges of the trustee, increased by a sum representing any additional charges which would have been incurred had no portion of the fund been distributed, ascertained by a method similar to that by which the income to be added to that actually earned is fixed. After the deduction from the income so determined of the amount of charges so ascertained the balance will represent the total net income upon the basis of which is to be determined whether, as regards the

"annuitants," the total net income of the trust is at least $55,000, and the share of the income actually earned to which the widow and son are entitled by virtue of the provision that they each receive 30 per cent of the total net income. The balance of the net income actually earned is then to be paid to the surviving granddaughter. The determination of the payments of income in this way does not run counter to the testator's intent as expressed in the will, but as nearly as may be effectuates the plan he had in mind. We applied a like method in *First National Bank & Trust Co.* v. *Baker,* 124 Conn. 577, 594, 1 Atl. (2d) 283.

Where distributors are appointed by a court of probate to divide an estate, they proceed upon the values determined by them as of the date of the distribution; and, in *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 375, 167 Atl. 808, where certain legacies were to be paid if the "net estate" exceeded a certain amount and the executor was given a broad discretion in determining the value of the estate, we held by analogy that the values were to be determined by them in the first instance as of the time when their account preliminary to the distribution of the estate was filed in the Court of Probate. In *Callahan* v. *Peltier,* 121 Conn. 106, 114, 183 Atl. 400, where the testator made gifts at the termination of a trust to be paid in cash or its equivalent, we held that the value of property distributed was to be determined, not as of the time of the termination of the trust but at the time the distribution was made. A like rule would apply in this case. In determining the portion of the fund now to be turned over to the Hospital Fund and the Hospital, the division should be made upon the basis of values as of the time of the distribution.

With reference to the gifts of income in subdi-

vision "A" of the ninth article, we find nothing in the will which prevents the trustees from making payments to the beneficiaries without waiting until the end of the year to determine whether the income of the estate is at least $55,000, provided those payments be such that the total amount received by each beneficiary in any year does not exceed that to which she is entitled as determined by the annual income of the estate as a whole. In any year when the income falls below the amount stated as determined by the method above outlined, the amount of income specified for each surviving beneficiary is subject to a proportionate reduction.

The testator clearly expressed his intention in subdivision "C" as to the income given to his son. Thirty per cent of the entire net income not exceeding $25,000 is to be set apart for him each year and the sum so set apart is all that can be used or accumulated for him. So much thereof as the trustees deem necessary for his support and maintenance is to be paid to him and the remainder of the sum so set apart is to be retained by them and accumulated for him. In no event can more than $25,000 be set apart for him in any one year and only the unused portion of that sum can be retained and accumulated. Any part of the accumulation so made can be paid to him whenever the trustees deem it necessary for his support, without regard to the $25,000 limitation. The testator intended that any sums to which the son is entitled are to be paid to him, so that he, and not the trustees, would be in control of their expenditure. *Bridgeport-City Trust Co.* v. *Beach,* 119 Conn. 131, 135, 174 Atl. 308.

We are asked certain questions as to the validity of the gift to the wife upon the son's death and of the gifts in remainder to his issue. Answers to these ques-

tions may become academic in certain respects if the wife does not survive her husband but it is pressed upon us that a failure to determine them will seriously interfere with the settlement of the estate of the granddaughter who has died, and as our decision will give to any unborn issue coming within the purview of the provisions all rights which they could claim, we have decided to answer the questions. *Wilson* v. *D'Atro*, 109 Conn. 563, 569, 145 Atl. 161. The testator provided that upon the death of his son, or if the son should die first upon his own death, the trustees are to pay two-fifths of the income which the son would have received had he lived to "the wife of my said son" provided that she be living with him at his death; that upon her death the designated part of the income should be paid to the "lawful issue" of his son for a period of twenty-one years in equal shares per stirpes and not per capita; and that at the expiration of that period the principal is to be paid to "the lawful issue" of his son then surviving per stirpes and not per capita. Then follow provisions as to the disposition of the share of the income given to the wife and the remaining three-fifths of the income to which the son would have been entitled, which are designed to meet various situations that might arise should she predecease the testator or the son or not be living with the latter when he died, and in certain of these the income is given to the son's "lawful issue" for a period of twenty-one years, the principal to be paid at the expiration of that time to such of them as then survived. If in these provisions the wife of the son referred to was the wife he had when the will was made and the testator died, none of these gifts would violate the rule against perpetuities, for they would vest, at the latest, at the end of twenty-one years after the death of a person living when the testator died. *Union & New Haven Trust*

*Co.* v. *Sherwood,* 110 Conn. 150, 159, 147 Atl. 562. The determining question is, then, whether or not the testator intended by the references to "the wife" of his son, the wife he had when the testator died, or meant any wife whom he might thereafter marry.

In the article of the will in question the testator twelve times uses the words "the wife of my son" or "the wife of my said son." The use of the word "the" in itself carries with it the implication of a reference to a definite person, and had the testator meant any wife his son might marry after the former's death he would have been more apt to say "a wife" or "any wife"; and the force of his use of the word ·"the" gathers weight from its repetition so many times. It appears in the agreed facts that the son had married his wife long before the death of the testator, that the testator was very fond of her and that he recognized her as having considerable ability in managing his son's affairs. It is certainly she whom he would naturally have in mind in making the provision in question. It is true that only in her case did the testator omit to give the name of a living beneficiary referred to in the will, but this fact is open to so many explanations that it affords little ground for a conclusion that he was not thinking of a particular person when he spoke of "the wife" of his son. In *Beers* v. *Narramore,* 61 Conn. 13, 19, 22 Atl. 1061, we construed a provision for the widow of the testator's son where the words most often used were "his widow" to mean his wife at the time of the testator's death, not any wife he might marry in the future; we said that the word "widow" as used in the will was equivalent in effect to the word "wife" and that, had the latter word been used "as there was then *in esse* a person fully answering to that description, and only one, such person must be understood as intended, although it is indeed possible that this person

might die, and another person might afterwards, at a remote date, as suggested, be born, who in another generation might come to answer the same description." In *Johnson* v. *Webber,* 65 Conn. 501, 509, 33 Atl. 506, we followed this decision and held that in a provision that if either or both of the granddaughters of the testatrix died leaving "a husband" he should have a life use of certain property, the reference was to their husbands living at the death of the testatrix. See also *Bridgeport City Trust Co.* v. *Alling,* 125 Conn. 599, 602, 7 Atl. (2d) 833. In *Greenwich Trust Co.* v. *Converse,* 100 Conn. 15, 122 Atl. 916, we held that in a provision for the wife of the testatrix's son, to come into effect at his death, the wife intended was not the one he had when the testatrix died but one he married after a divorce from the woman who was his wife at that time; but we placed that construction (p. 27) upon the fact that the provisions were "for the benefit of the wife as one of her son's 'family' " and not for the personal benefit of the first wife; and it may be added that the will then before us, in distinction to that which we are now considering, provided that upon the death of the son "if he leave a wife him surviving" she was to have the benefit of the fund. Under this construction of the will, the wife who was intended might not have been living when the testatrix died, and so we held in *Greenwich Trust Co.* v. *Shively,* 110 Conn. 117, 124, 147 Atl. 367, that gifts over at her death to the issue of the son might offend the rule against perpetuities and so were void. In the will before us, the gift of income to the son's wife and the gift of the income for a period of twenty-one years and at the expiration of that time of the principal to the son's issue are valid.

The trustees made the last regular quarterly payment of income to the beneficiaries on February 9, 1939. The testator's daughter died on April 4th of

674

that year. On that day the trustees had in their possession $9730.62 of income which they had collected from the investments of the estate, and $5369.35 of income had accrued on those investments but had not actually been collected. On February 27th of that year a dividend was declared on certain stock of the Consolidated Edison Company of New York, Inc., which was held by the trustees, payable on May 9, 1939, to stockholders of record on March 31, 1939. We are asked whether the estate of the daughter is entitled to receive any portion of these sums. The following facts are stated: "The trustees have never set aside nor appropriated any income to or for Helene Russ Warren other than the payments from income to her, but at the end of each year have paid over to her all income accruing for her benefit under the terms of the will. Neither have said trustees reserved or determined to withhold from her any part of said income that might otherwise be payable to her, because they deemed some part thereof unnecessary for her support, nor had they determined so to withhold from her any part of the income to be collected or to accrue between the dates of February 9, 1939, and May 9, 1939." These facts bring the case within the decision of *Greenwich Trust Co.* v. *Shiveley,* 110 Conn. 117, 121, 147 Atl. 367, rather than that of *Cromwell* v. *Converse,* 108 Conn. 412, 143 Atl. 416, and, in accordance with the former, we advise that the trustees have the right to pay to the executors of the daughter's estate so much of the share of the income which she would have received had she lived as is necessary to pay any debts or obligations which they deem were properly incurred by her for her support during her life. The case is one of a spendthrift trust with a discretion in the trustee, and falls within comment "b" under § 158 of the Restatement of the Law

of Trusts instead of within paragraph (2) of that section; but for the reasons stated in *Cromwell* v. *Converse,* supra, we cannot follow the broad statement in that comment, that in the case of such a trust the executor or administrator of the beneficiary's estate is not entitled to the income.

In *Bridgeport Trust Co.* v. *Marsh,* 87 Conn. 384, 398, 87 Atl. 865, we held that in the case of bonds, as in that of other interest-bearing debts, income received after the decease of a testator was apportionable between the principal of a trust fund he established and the income from it, and the same principle applies as regards income which had accrued at the death of a life tenant, so that his estate becomes entitled to it, with a limitation in this case growing out of the nature of the daughter's right to receive the income. *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 377, 167 Atl. 808. It is pointed out in *Bridgeport Trust Co.* v. *Marsh,* supra, that dividends on stock are not, under the law of this state, which follows the so-called Massachusetts rule, apportionable until they become a debt due the stockholder; *Smith* v. *Dana,* 77 Conn. 543, 60 Atl. 117; *Richter & Co.* v. *Light,* 97 Conn. 364, 366, 116 Atl. 600; 12 Fletcher, Corporations, § 5393; and to this extent our law would control the question in the case before us. It is also our law that in declaring a dividend, if it is made payable to stockholders of record on a certain day, a debt to them then arises; *Richter & Co.* v. *Light,* supra; but in this respect the situation would be controlled by the law of the state of incorporation. *Union & New Haven Trust Co.* v. *Watrous,* 109 Conn. 268, 279, 146 Atl. 727. In the case before us, both the declaration of the dividend and the day for determining who were the stockholders of record passed before Helene's death, and under our law her

estate would be entitled to the dividend. But we are not informed of the state under whose laws the corporation exists, and consequently are without adequate basis to answer the question whether her estate was in fact entitled to them.

The questions we have decided to answer are stated in the footnote.[1] To questions 1 (e) and 1 (f) we answer that if Ada G. Russ does not insure the prem-

[1] 1. Under the provisions of the fourth clause of the will of said deceased:

(e) Is it the duty of the trustee to insure said premises against loss by fire, and if so should the premium be apportioned between Ada S. Russ and the remaindermen?

(f) If apportionment of said premium is proper, how should it be made?

2. Under the provisions of the ninth clause of the will of said deceased:

(a) Should the trustee retain all the residue, together with any remainders that fall into it, in one single trust and pay out of the general income the annuities and the beneficial payments provided in subsections "B" "C" and "D" of said ninth clause, or should separate trust funds of principal, sufficient in amount to produce the required annuity and beneficial payments be established?

(b) Should the trustees pay to any annuitant any amounts on account of his or her annuity for any yearly period prior to the close of that yearly period with actual receipt of income of $55,000 or more from the entire residuary estate?

(c) Does the provision that the aforesaid annuities are predicated on an annual income of $55,000 from the entire residue mean that the annuities shall be reduced pro-rata any time that the entire income from the residue fails to reach $55,000 in a given year?

(d) If one or more annuitants should survive the falling in of the ultimate remainder interest in any part or parts of the residuary estate, thereafter should the trustees continue to pay the annuities in case the entire [undistributed] residuary estate yields less than $55,000 per year, in accordance with the directions contained in the ninth paragraph of the will, Part A, Section 4?

(e) Should the trustees set up a principal fund for the trust for Ada S. Russ under part "B" of paragraph ninth?

(g) Do the same answers to questions "e" and "f" regarding the setting up of a principal fund apply to section "C-1" of paragraph ninth as well?

(h) Do the same answers to questions "e" and "f" regarding the

ises described in the fourth clause of the will against loss by fire, the trustees should do so at her expense.

setting up of a principal fund apply to Section "D" of paragraph ninth, especially in view of the death of Helene Russ Warren?

(i) Does the direction for accumulation require the trustees to accumulate all income of this trust not actually paid over to or applied for John B. Russ, or only so much of it as will with the sum paid over to or applied for John B. Russ equal but not exceed $25,000 per annum?

(j) If the trustees have accumulated income in past years, can they pay over these accumulations in addition to a current income of $25,000?

(k) If thirty per cent of the entire net income of the general residue is less than $25,000 in any one year, can the trustees add to it income accumulated in the past year or years and make a total payment of $25,000 to the son?

(m) During the life of John B. Russ do the trustees have discretion to refrain from making any payments directly to him and in lieu thereof to make payments to a third person for the support of John B. Russ?

(o) Is the gift of a life estate of income to the son's wife void as contrary to the rule against perpetuities?

(p) Is the remainder to John B. Russ's issue, as provided in paragraph ninth C-2 of the will, wholly void as contrary to the rule against perpetuities, or is the twenty-one year limitation void and the vesting of the principal good, and will the vesting of the principal be accelerated?

(u) Is the estate of Helene Russ Warren entitled to any of the income collected by the trustees since February 9, 1939, at which time payments by the trustees were made to all parties entitled thereto, to the date of her death on April 4th, 1939, and in addition to income actually collected during said period, is her estate entitled to any of the interest on bonds held in the trust estate, accrued to the date of her death but not actually collected by the trustees, as well as a dividend on certain stock payable to owners of the same on March 31st, 1939, but not received by the trustees until May 1st, 1939, or does it become part of the principal of the residuary estate?

(v-a) Should the trustees pay, at this time, to the United Hospital Fund and to Griffin Hospital, in equal shares, one-half of the principal of the trust fund, the income of which Mary Warren Horton would have been entitled to receive, had she survived?

(w) If the preceding question is answered in the affirmative, how shall the trustees figure the value of such fund, as of the date of

To questions 2 (a), 2 (e), 2 (g) and 2 (h) that the trustees should retain all the residue in a single trust. To question 2 (b) we answer that the trustees may pay any annuitant mentioned in subdivision "A" of the ninth article of the will any part of her annuity during the course of any year, provided all payments made during the year do not exceed the amount to which the annuitant is entitled for that year. To questions 2 (c) and 2 (d) we answer "Yes." To questions 2 (i), 2 (j) and 2 (k) we answer that, treating each year as a unit, the trustees should set apart 30 per cent of the net income of the residuary estate during that year for John B. Russ, not exceeding $25,000, and hold any amount of the sum so set apart not paid to him as an accumulation, and that such accumulations or any part thereof may be paid to him under the terms of the will during any succeeding year. To question 2 (m) we answer that income to the benefit of which John B. Russ is entitled should be paid to

the death of Helene Russ Warren, or as of the date of actual distribution to said United Hospital Fund and said Griffin Hospital?

(x) If the Trustees pay to the United Hospital Fund and to Griffin Hospital that portion of the principal of the trust fund the income of which Mary Horton Warren would have been entitled to receive had she survived, how shall they pay the income received from the balance of the residuary trust:

    a. To the four annuitants mentioned in the ninth paragraph, at A;

    b. To Ada S. Russ, the widow;

    c. To John B. Russ;

    d. To Jean Warren Southack?

3. Under the provisions of the eleventh clause of the will of said deceased:

(a) Are the gifts of income provided for in parts "B", "C" and "D" of the ninth clause of the will "bequests" as that term is used in said eleventh clause of the will?

(b) Should the trustees' commissions and expenses be paid from the principal of the trust estate, or should all or any part thereof be charged to and paid by the beneficiaries of the gifts of income provided for in parts "C" and "D" of the ninth clause of the will?

him, not expended by the trustees for him. To questions 2 (o) and 2 (p) we answer that the gift of income to the son's wife, that is, his wife at the death of the testator, and the gifts both of income and of principal to the issue of John B. Russ as stated in the will are valid. To question 2 (u) we answer that the trustees may pay to the estate of Helene Russ Warren such portion of the income of the trust collected, or accrued but not collected, as represents charges against her deemed by them to have been properly incurred for her support, except that we give no advice as to the dividend on corporate stock referred to. To question 2 (v-a) we answer "Yes." To question 2 (w) we answer that the value of the fund distributed to The United Hospital Fund and Griffin Hospital should be determined as of the time of the actual distribution. To question 2 (x) we answer that the determination of the amounts to be paid to the "annuitants" and the widow and son should be based upon the income actually received from the balance remaining in the trust fund after the distribution to the Hospital Fund and the Hospital plus an additional sum representing the income which would have been received from the portion so distributed had it remained in the trust, less the amount of charges and expenses of administering the trust actually incurred increased by such sum as would represent any additional charges which would have been incurred had no portion of the fund been distributed, these additional sums to be calculated as stated in the opinion. To question 3 (a) we answer "Yes." To question 3 (b) we answer that the trustees' commissions and expenses are a charge upon the entire estate in their possession under Article Ninth of the will, payable, in the absence of some unusual circumstances, from the general income received from the

fund before any payment of income is made to any of the beneficiaries and not from the principal.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.