A. HENRY MOSLE, TRUSTEE, *vs.* CASPAR F. GOODRICH ET AL.

First Judicial District, Hartford, January Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

The primary and usual meanings of the words in a will are to be applied in its construction, unless the testator's intended use of them in another and reasonable sense is so clearly indicated, upon an examination of the entire instrument, as to overcome their ordinary signification and satisfactorily establish the unusual meaning contended for.

A testatrix created a trust fund for the benefit of a daughter during her life, with authority to the trustee to pay over the principal of the fund to the daughter if at any time "after the death of her husband Douglas Campbell" such disposition of the principal should seem desirable to the trustee; otherwise to transfer the

Mosle *v.* Goodrich.

principal upon the daughter's death to her heirs at law. About five years after the decease of the testatrix the daughter obtained a divorce from her husband, Campbell, who is still living, and later married a man named Davis. No child has been born of either union. The trustee is now desirous of turning over the principal to Mrs. Davis, and her father and only sister have given their consent. *Held* that the sole contingency upon which the trustee was free to make this payment was the "death" of the daughter's husband; that her separation from him by divorce was not a fulfilment of that contingency, and therefore the trustee was not at liberty to pay over the fund to the daughter.

The intention of a testator, when properly discovered and sufficiently expressed, if not unlawful, is to be given effect; but that intent must be found in the will as written, when read in the light of the circumstances surrounding the testator at the time of its execution.

Argued January 6th—decided March 5th, 1920.

Suit to determine the construction of a portion of the will of Eleanor Milnor Goodrich of Pomfret, deceased, brought to and reserved by the Superior Court in Windham County, *Burpee, J.*, upon the facts alleged in the complaint, for the advice of this court.

Eleanor M. Goodrich died May 29th, 1908, leaving a considerable estate and a will executed in 1903 and duly probated. There survived her, her husband, Admiral Caspar F. Goodrich, and three children, to wit, Eleanor, Gladys and Caspar, the last two being minors. Her husband, still living, has since her death remarried. Eleanor, before the will was executed, had married Douglas Campbell, and was so married at the time of the testatrix's death. Some five years after that event she obtained a divorce from Campbell and later married a man named Davis, who is now her husband. No child has been born of either union. Campbell is living. Gladys, subsequent to Mrs. Goodrich's death, married John C. Brennon, and one child has been born to them. Caspar has died unmarried.

By her will the testatrix gave the residue of her estate, consisting of both real and personal property,

to the plaintiff, Mrs. Campbell and Caspar, as trustees. They were directed to divide it into three equal shares and to hold each of the shares under a specified trust. The trust under which one of the shares was to be held was defined in the will as follows: "To hold, manage, invest and reinvest the same, and to collect and receive the income, rents, issue and profits thereof and to pay over the net income thereof semi-annually or oftener to my said daughter Eleanor G. Campbell during the term of her natural life, or until such time after the death of her husband Douglas Campbell as it shall seem desirable to my said trustees to pay over to her the principal of said equal share, and in case at any time after the death of said Douglas Campbell my said trustees shall consider it desirable to pay over to my said daughter the principal of said equal share, I hereby expressly authorize them at any such time to pay over, convey and transfer the same to her absolutely and free from any trust. But in case my said trustees shall not so elect to pay over to my said daughter the principal of said equal share, then upon the death of my said daughter upon further trust as follows: To pay over, convey and transfer said share so set apart for her to her heirs at law in the same proportions as they would inherit under the laws of the State of Connecticut if she had died intestate."

The trusts relating to the two remaining shares were for the benefit of the other two children respectively, and were to terminate in the transfer of the property to them upon their reaching specified ages, or in the event of the death of either of them before such transfer, to their heirs at law.

The testatrix's estate was settled by the plaintiff and Mrs. Campbell, the then surviving executors, and the net residue paid over by them to themselves as trustees. Subsequently Mrs. Campbell resigned

as trustee, and the plaintiff has since acted and is now acting as sole trustee. The estate now in his hands, and forming the one-third portion coming under the provision of the will recited, amounts to approximately $25,000, and he is desirous of turning it over to Mrs. Davis, formerly Mrs. Campbell, if he is at liberty to do so under the provisions of the will. The complaint so alleges and seeks the advice of the Superior Court in respect to his power and right to do so.

Both Admiral Goodrich and Mrs. Brennon have filed their consents that the payment and transfer to Mrs. Davis, as desired by the plaintiff, be made. The Superior Court, upon the plaintiff's motion that some suitable person be appointed to represent the apparent and presumptive beneficiaries under the provision of the will under consideration, made such appointment, and the appointee has appeared in opposition to granting the plaintiff's request.

*Ernest C. Morse,* for the plaintiff.

*Charles E. Searls,* for the defendant Eleanor G. Davis.

*Mahlon H. Geissler,* for apparent and presumptive heirs.

PRENTICE, C. J. The event whose happening fixes the time subsequent to which the corpus of the trust fund in question may, in the discretion of the trustees, be paid over to the testatrix's daughter, formerly Mrs. Campbell but now Mrs. Davis, as and for her absolute estate, is described in the will as the death of her husband Douglas Campbell. Campbell is still living, but has been divorced from his former wife, so that the relation between them of husband and wife no longer exists. If, therefore, the testatrix intended to make the term of the necessary continuance of the

trust in favor of her daughter to be terminated at Campbell's decease, that contingency has not yet occurred. If, on the other hand, the testatrix at the time she executed her will intended by the language she employed in it, reasonably capable of that construction, to condition such continuance upon the continued existence of the marriage relation between her daughter and Campbell as well as upon Campbell's remaining alive, the situation is otherwise, and the plaintiff trustee has become free to turn over the trust fund to Mrs. Davis should he deem it desirable to do so.

The primary and usual meaning of the language of the will, which supplies the prima facie test to be applied in its interpretation, indicates that the testatrix had in mind Campbell's decease as the event whose happening should render it possible that the trust fund be paid to her daughter. *Bartlett* v. *Sears*, 81 Conn. 34, 39, 70 Atl. 33. If any other construction is to be given to it it can only be because the will in its entirety, when read in the light of the circumstances and conditions surrounding the testatrix when she made it, indicates that she had in contemplation some other event also, that she used the language of her will with the intention of comprehending within its terms such event, and that the language used was reasonably capable of such comprehension. In other words, the language subjected to construction must reasonably be capable of more than one interpretation, and any claimed interpretation to be adopted must be one giving effect to the testatrix's intent in her use of it, and that intent must be gathered from the will when read in the light of the circumstances surrounding the testatrix when she made it, and the language employed in the will must be reasonably capable of expressing that intent. A construction which does not satisfy these

conditions must be avoided, else the court gives effect to an unexpressed intent, substitutes for what the testatrix has said what it thinks she meant or would have wished to say, and in effect drafts a new will to take the place of the one the testatrix in fact executed. *Comstock* v. *Comstock*, 78 Conn. 606, 612, 63 Atl. 449; *Weed* v. *Scofield*, 73 Conn. 670, 677, 49 Atl. 22; *Wolfe* v. *Hatheway*, 81 Conn. 181, 185, 70 Atl. 645; *Jackson* v. *Alsop*, 67 Conn. 249, 253, 34 Atl. 1106.

Upon examination of the simple, direct and unequivocal terms used by the testatrix to describe the contingency which should render her trustees free to pay over the trust fund to her daughter, Mrs. Davis, it is by no means easy to discover a semblance of ambiguity about them. "Death" is the vital and controlling word, and when spoken of animate beings it is difficult to conceive of one of more precise and universally accepted meaning. If, however, it can by reasonable possibility be said that, used as it was by Mrs. Goodrich and in its connection, it may have been employed by her to comprehend something else than the mere end of earthly existence, the second stage of the inquiry, involved in the construction of the passage in question in such a way that not only Douglas Campbell's death in the ordinary acceptation of that word, but also his divorce from his then wife should mark the time when the trust might be terminated, would be beset with formidable obstacles, if accepted principles of construction are not to be disregarded.

To be sure, the intention of the testatrix, when properly discovered and sufficiently expressed, if not unlawful, is to be given effect. But that intent must be discovered from the will as written and read in the light of the circumstances surrounding the testatrix when it was made. Here the record supplies no such circumstances by possibility helpful in the construction

of the will, beyond those which appear in it and those showing the relationship and purely personal relations of the parties in interest, save perhaps one.

The will suggests no lack of affection on the testatrix's part for her daughter. It indicates the fullest confidence in her and in her integrity, business capacity and responsibility. This is shown by her appointment as co-executor and trustee, and as sole guardian without bond of the person and estate of the testatrix's minor children in the event that their father should not be living at her death. The will also shows that the testatrix had, at the time at which it was made, loaned to Campbell, or to his wife on his behalf, the sum of $4,860, which loan was then outstanding. Its provisions in favor of the other two minor children of the testatrix are in the nature of absolute gifts upon their reaching the age of thirty-five years.

From these facts, which are alone pointed out as having present pertinence, it might not unreasonably be surmised that the testatrix's wish would have been that Mrs. Campbell's one-third portion should become hers absolutely upon her becoming free from her husband, and that she would have made provision to that effect had she had it in mind to make provision for that contingency; but that falls far short of indicating with any degree of clearness that she had such contingency in mind and made provision intended to meet it. The clear and unequivocal language of the will indicates, as we have already observed, the contrary. It is little short of inconceivable that Mrs. Goodrich, if she were providing for the possible contingency of a divorce, should not have used language indicative of that fact and not used the word "death" alone to describe the contingency for which she was making the provision. That word is one of too single and well understood meaning to admit of any such conception

of its use by the testatrix. Simple words of every day use and having an accepted primary and usual meaning are not to be so lightly regarded, and their signification so easily overridden. If, in interpretation, they are to be accorded some other than their primary and usual meaning, it must be because a testator's use of them in such other meaning is so clearly indicated, upon an examination of the entire instrument, that their presumptive meaning is overcome and their intended unusual meaning satisfactorily established. In this case, clearly that situation does not exist.

Counsel have directed our attention to five cases arising in four different jurisdictions presenting situations claimed to be analogous to that before us, and questions claimed to be substantially similar to the present. They are *Koenig's Appeal*, 57 Pa. St. 352; *Lee's Estate*, 207 Pa. St. 218, 56 Atl. 425; *Cary* v. *Slead*, 220 Ill. 508, 77 N. E. 234; *In re Estate of Cornils*, 167 Iowa, 196, 149 N. W. 264; *Pelton* v. *Macy*, 124 N. Y. App. Div. 367, 108 N. Y. Supp. 713.

The decision in the first four of these cases was in accordance with the claim advanced on behalf of Mrs. Davis. That in the last named was to the contrary. It is unnecessary to examine the facts involved in the majority cases, and to point out the somewhat stronger states of facts in aid of the construction given which appear in some of them at least. Whatever those differences are, they are not sufficient to render any one of the cases unworthy of citation in behalf of Mrs. Davis's cause. Especially is that true of the reasons assigned for their conclusion. Those reasons, however, fail to satisfy us of their sufficiency and soundness. They lead, as we think, to the giving effect of an unexpressed intent which the testators were, for more or less persuasive reasons, presumed to have entertained or would have entertained.

It has been suggested that as by reason of the divorce the relation of husband and wife between Mr. and Mrs. Campbell has been terminated, the latter no longer has a husband, Douglas Campbell; that it has, therefore, become impossible that such husband should die, and that as a consequence the condition involving that contingency has become one which cannot arise and is inoperative. This suggestion overlooks certain facts and considerations, to wit: (1) that a divorce does not necessarily result in the termination for all time of marriage relations between the divorced couple, as not infrequent instances to the contrary demonstrate; (2) that the will makes Campbell's death the condition of the possible release of the property from the trust, and uses the word "husband" simply as descriptive of him; (3) that, the controlling event is made the death of Campbell and not his death while he is her husband, and (4) that a nullification of this condition would not suffice to release the fund from the operation of the trust to which it has been made subject, and from which it may not be discharged except upon the happening of either one of two contingencies described to be the death of Mrs. Campbell or that of her husband Douglas Campbell. If it has become impossible for the latter contingency to arise, the result would be to leave the death of Mrs. Campbell as the only event which could accomplish the termination of the trust.

The Superior Court is advised to render its judgment advising that the plaintiff trustee is not at liberty to pay or turn over the trust fund in question to Mrs. Davis under the conditions now existing, and that neither he nor his successors in said trust will be at liberty to do so until the decease of Douglas Campbell.

In this opinion the other judges concurred.