George S. Willis et al., Trustees (Estate of Friend
A. Russ) *v.* Elizabeth G. Hendry,
Executrix, et al.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued October 9—decided December 9, 1943.

*William F. Healey,* for the plaintiffs.

*Edward J. Donahue,* for the defendants Jean W. Southack et al.

*Joseph L. Melvin,* for the named defendant et al.

*Harold E. Drew,* for the defendants Griffin Hospital and United Hospital Fund of New York City.

*Louis Weinstein,* for the defendants Ada S. Russ et al.

MALTBIE, C. J. In this action, the trustees under the will of Friend A. Russ are seeking a construction of certain of its terms. The will was before us in an earlier case, and, in a footnote to our opinion, the trust provisions are summarized. *Willis* v. *Hendry,* 127 Conn. 653, 656, 20 Atl. (2d) 375. For a discussion of the questions now before us, a brief statement of its provisions will furnish a sufficient background. The testator, in the fourth article, gave his homestead to trustees, his widow to have the life use of it, or, if she elected to have it sold, of the income from the proceeds, with a provision that upon her death the property or the principal of the fund was to become a part of "my residuary estate and be disposed of as such as hereinafter provided." In the ninth article he gave all the residue of his estate to the trustees. They were directed "to pay the income" as follows: Certain definite sums were to be paid annually to four beneficiaries, with a provision that upon the death of each "the principal of the fund so held in Trust, the income of which such beneficiary was entitled to receive, shall remain part of my residuary estate and be disposed of in accordance with the following pro-

visions of this my Will." Thirty per cent of the net income, with certain limitations, was to be paid to the testator's widow during her life, with a provision that upon her death "the principal fund so held in trust, the income of which my wife was entitled to receive, shall remain part of my residuary estate and be disposed of as such in accordance with the provisions of this Paragraph Ninth of my Will." Thirty per cent of the net income, with certain limitations, was to be paid to the testator's son John, with these further provisions: At his death, or, if he predeceased the testator, at the latter's death, two-fifths of the income which he "would have been entitled to receive" was to be paid to his wife during her life and at her death to his lawful issue for a period of twenty-one years, at the expiration of which time they were to receive the portion of the principal the income of which she "would have been entitled to receive"; if at her death there were no such issue, then that portion of the principal "shall be added to and form a part of the trust created by the following paragraph D of this my Will and shall be held and disposed of in accordance therewith"; the remaining three-fifths of the income or, if John's wife predeceased him or was not living with him at his death, all the income, was to be paid to John's lawful issue for a period of twenty-one years, at the expiration of which time they were to receive the part of the principal the income of which they "were entitled to receive"; but, if John left no surviving issue and his wife survived him and the testator, upon the death of the survivor of John or the testator the part of the principal the income of which the issue "would have been entitled to receive," that is, three-fifths of John's share, and if the wife did not survive John and the testator then the part of the principal the income of which John "would have been

entitled to receive," that is, all of John's share, "shall be added to and form a part of the estate hereafter created under Paragraph Ninth D of this my Will and shall be held and disposed of in accordance therewith." Paragraph Ninth D provided that the remainder of the income, with certain limitations, was to be paid to the testator's daughter Helene for her life, with further provisions that upon her death or, if she predeceased the testator, upon his death, one-half of the income she "would have been entitled to receive" was to be paid to each of her daughters, Mary and Jean, during life.

At the death of each of these daughters, the principal the income of which was given to her was disposed of by identical provisions. That as to Mary's portion is as follows: "Upon the death of my granddaughter, Mary, surviving my daughter and myself, or if my granddaugher, Mary, predeceases the survivor of my daughter and myself, then upon the death of the survivor of my daughter and myself, I direct my trustees to pay in equal shares to her issue then surviving, per stirpes and not per capita said one-half of the principal of the trust fund the income of which my said granddaughter, Mary, would have been entitled to receive had she survived, and if my said granddaughter, Mary, leaves no issue then surviving, I direct my trustees to pay said one-half of the principal of the trust fund the income of which my granddaughter would have been entitled to receive had she survived to such persons and in such proportion as may be provided in the last Will and Testament of my said granddaughter, Mary, and should she fail to leave a Will or effectually dispose thereof, then I direct my Trustees to pay said one-half of the principal of the trust fund as follows: namely: One-half thereof to the United Hospital Fund of New York City or its

successors for the uses and purposes of said corporation and the remaining one-half to Griffin Hospital of Derby, Connecticut, or its successors." For convenience we shall refer to this provision as sub-paragraph 10. Only one other provision of the will requires mention: After sub-paragraph 10, the testator makes an alternative gift in the case of each hospital if "at the time of the distribution of the principal" it has been dissolved or ceased to function and has no successor, using the quoted phrase four times, twice as regards Mary's portion of the estate and twice as to Jean's.

When this will was previously before us, Helene, who survived the testator, had recently died, Mary having predeceased her, and we held (p. 666) that the hospitals were immediately entitled to receive one-half the portion of the principal the income from which Helene had been receiving. John has now died, leaving his wife surviving but no issue. Hence, by the terms of the will, three-fifths of the portion of the principal from which he had been receiving income falls within the provision that it "shall be added to and form a part of the estate hereafter created in Paragraph Ninth D of this my Will and shall be held and disposed of in accordance therewith." As Helene is dead and Mary predeceased her, without issue, no descendant of the testator who could receive the income from one-half of this portion of the principal now survives, and the first question presented to us is as to its proper disposition. The hospitals claim that they are immediately entitled to receive it. The other interested parties claim that, under the provision we have quoted from the will, the rights of the hospital accrued, and only accrued, "upon the death of Mary, or if she predeceased the testator and her mother, Helene, upon the death of the survivor" of them; that

their rights were exhausted when they received a share of the principal upon Helene's death; that they are not entitled to receive any portion of the principal which, on the death of John, fell within the provisions of Paragraph Ninth D; and that one-half of this portion of the principal is therefore intestate.

Sub-paragraph 10 does not present a situation which can be solved by the application of the principle that, where one or more successive life estates are created, with an ultimate remainder over, and a life tenant dies before succeeding to the enjoyment of the estate, the succession to that enjoyment by those whose estates are in terms postponed by the intervening life estate is accelerated. *Hollister* v. *Butterworth,* 71 Conn. 57, 60, 40 Atl. 1044; *Blakeslee* v. *Pardee,* 76 Conn. 263, 267, 56 Atl. 503; note, 133 A. L. R. 1368. Here the testator himself provided for the succession to the enjoyment of the property should Mary die before her mother, to whom he gave the preceding life estate; when the will was before us on the previous occasion, we held that upon that contingency happening the hospitals became entitled to a part of the fund because of the express terms of the will; and the question now is not as to their right to succeed to the enjoyment of a part of the fund but as to the extent of the interest to which they have become entitled. There is little in the will read in the light of such surrounding circumstances as are apparent on the record which is of any assistance in determining the intent expressed in this paragraph. The various provisions that in certain contingencies portions of the principal the income of which was given to individual beneficiaries should become a part of the residuary estate or fall into the trust fund and be disposed of as a part thereof do not help; for the question before us is, when these portions have become an integral portion of the trust fund

how are they to be disposed of, and upon that question these provisions shed no light. When the will was previously before us, we pointed out (p. 662) that the testator was evidently thinking primarily of the disposition he would make of the income from the residue of his estate, that it was only when the specific gifts of income could no longer operate that he turned to a consideration of the distribution of the principal, and that he had clearly failed to think through his plan for that distribution. The situation before us well illustrates that fact.

The words of sub-paragraph 10 fix a definite time when certain rights accrue to the hospitals, that is, upon the death of Mary, or should she predecease the survivor of the testator or her mother, upon the death of that survivor. At that time the trustees are "to pay" the portion of the principal the income of which was to go to Mary to her issue, or if she left no issue they were "to pay" it to such persons as she might provide in her will, and if she failed to dispose of it by will, "to pay" the portion of the principal in question to the hospitals. The word "pay" as here used was undoubtedly intended to express the meaning of the satisfaction of a demand in money or by a transfer of securities. *Chase National Bank* v. *Schleussner,* 117 Conn. 370, 377, 167 Atl. 808. In a testamentary provision, "pay" does not ordinarily refer to the vesting of a right but signifies rather the succession to the enjoyment of property. *Roosa* v. *Harrington,* 171 N. Y. 341, 353, 64 N. E. 1; *Lippincott* v. *Pancoast,* 47 N. J. Eq. 21, 27, 20 Atl. 360. That is clearly so in this case because such rights as the hospitals had to receive any portion of the principal under this paragraph became wholly vested in them on Mary's death without issue and leaving no will, although that occurred before the death of her mother, and it was not until

the latter event that they could succeed to the enjoyment of the property. It was upon the occurrence of this event that they became entitled to receive the portion of the principal the income of which Mary would have been entitled to receive had she survived. See *Bartlett* v. *Sears*, 81 Conn. 34, 43, 70 Atl. 33; *Mosle* v. *Goodrich*, 94 Conn. 426, 430, 109 Atl. 166. There is a complete lack of any provision that the hospitals should at any other time become entitled to enjoy any portion of the principal. To hold that at John's death, occurring at a later time, they might take a share of the principal that then fell within the provisions of the paragraph in question would be to read into the will an intent which the testator, if he had it, has completely failed to express. Indeed the provisions of the paragraph suggest that he did not have such a contingency in mind; twice he speaks of the income which Mary "would have been entitled to receive had she survived," and the survival to which he evidently refers is that with which he deals at the beginning of the paragraph when he speaks of Mary "surviving my daughter and myself," or if she predeceases the survivor of them, "upon the death of the survivor of my daughter and myself"; he was not thinking of the contingency that Mary might survive John or others upon whose death a portion of the principal might fall within the provisions of the paragraph, but only that she might survive his daughter and himself. A similar suggestion arises out of the use, in the alternative gifts in the event that either hospital has dissolved or ceased to function and has no successor, of the words "at the time of the distribution," instead of a phrase referring to distributions to be made at different times. The fact that the testator, in sub-paragraph 10, twice speaks of "said one-half of the principal of the trust fund the income of

which" Mary would have received had she survived, and once of "said one-half of the principal of the trust fund," does not assist in solving the question before us; the only "one-half" to which he has previously referred is the equal division, at Helene's death, between her daughters, Mary and Jean, of the income Helene would have been entitled to receive under paragraph Ninth D; primarily this would be the income directly given to Helene under the will; but had John died without issue and had she survived him, that portion of the principal from which she received income would have been augmented by the three-fifths of the principal here in question; and the testator might have had in mind either the primary gift to her, or that gift as so augmented. Evidently he overlooked the possibility that the portion of the principal he intended to dispose of in this paragraph might, after Mary's death, be augmented as a result of other provisions of his will. We cannot supplement his expressed intent by reading into the will a provision which is without support in its terms. *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 328, 130 Atl. 483; *Mosle* v. *Goodrich,* supra.

Undoubtedly it was the testator's general intent that all the principal of the residue, in the event that John died without issue, or, if he left issue, all except the portion which would go to them, was ultimately to be divided between the issue of the testator's granddaughters, Mary and Jean, should they leave issue; but as between their respective issue there were no cross gifts, and consequently if either died without issue the half of the principal intended for her issue was to be disposed of to such persons as she might designate by will, or, in default of a valid will, to the hospitals. When the will was before us on the other occasion, we pointed out (p. 666) that its terms show that the tes-

tator contemplated that the hospitals might take a share of the principal even as early as his own death, because he expressly provided that, if Mary died before her mother and himself without issue and having made no will, upon the death of the survivor of them, which might be himself, the hospitals would be entitled to the fund. That the hospitals should now receive the portion of the principal in question would apparently not be contrary to the testator's general intent. Indeed, there is much in the will which tends to support their claim. The daughter Jean has issue; had Mary died when she did, leaving issue, they would now be in the position of the hospitals, and only by the construction of the will which the hospitals claim could equality in that event be preserved between the respective issue of Mary and Jean. So, if Mary died with issue, the contrary construction would make equality between the respective issue of Mary and Jean depend upon the fact whether Mary survived her uncle John or died before him. It must also be recognized that the testator clearly intended by his will to make a complete disposition of his property. However, "Provisions in a will evidencing a general intent, may serve sometimes to explain, but never to explain away, the expression of a particular intent." *Connecticut Trust & Safe Deposit Co.* v. *Hollister,* 74 Conn. 228, 233, 50 Atl. 750. A general intent can prevail only "if the will can fairly be so read, considered as a whole." *Walsh* v. *McCutcheon,* 71 Conn. 283, 286, 41 Atl. 813. It cannot avail to supply an intent which does not find expression in the will. *Bronson* v. *Pinney,* 130 Conn. 262, 269, 33 Atl. (2d) 322. Though a testator clearly intends to dispose of his entire estate, "a construction required by the terms of a will cannot be avoided because it leads to intestacy in whole or in part." *Wolfe* v. *Hatheway,* 81 Conn. 181, 186, 70 Atl.

645, and see *Jackson v. Alsop,* 67 Conn. 249, 254, 34 Atl. 1106; *Brinsmade* v. *Beach,* 98 Conn. 322, 330, 119 Atl. 233. The rule that a will is to be construed to avoid intestacy as to any part of the estate applies only when the particular provision in question is "fairly open to two constructions." *White* v. *Smith,* 87 Conn. 663, 673, 89 Atl. 272; and see *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 750, 136 Atl. 588, *Citizens & Manufacturers National Bank* v. *Guilbert,* 121 Conn. 520, 526, 186 Atl. 564. At John's death without issue, so much of the principal as represented three-fifths of the share of the income he had been receiving went to augment the portion of the principal the income of which was given to the testator's daughter Helene. As Helene predeceased John, Mary, had she lived, and Jean would on his death have each become entitled to one-half the income of the augmented fund. As Jean is alive, so much of the principal as represents one-half of three-fifths of the income John had been receiving continues in the trust, with the income payable to her; but so much of the principal as represents the other half of the three-fifths of the income John had been receiving falls within the provisions of sub-paragraph 10, is not disposed of by that paragraph and is intestate property. For the reasons given when we formerly considered this will (p. 666), it should presently be distributed as such.

We are also asked as to the effect of the provisions of the fourth article of the will in which the testator provides that at the death of his widow the homestead, which he had given to the trustees for her use during her life, or if sold the proceeds of the sale, "shall be and become part of my residuary estate and be disposed of as such as hereinafter provided," and as to the effect of the provisions in the ninth article that at her death the portion of the principal of the fund the

income of which she was to receive during her life "shall remain part of my residuary estate and be disposed of as such in accordance with the provisions of this Paragraph Ninth of my Will." The widow is living, but of advanced years, and there is no contingency attached to the provisions we have quoted. Counsel for the trustees stated that it will be of material assistance in the administration of the trust if these questions are answered now, and we have decided to do so.

The testator intended that at the death of his widow the homestead or, if it is sold, the proceeds of the sale should become an integral part of the trust fund given to the trustees in the ninth article, and that the right given her in that article to receive a share of the income from the trust should then cease as a distinct interest. Had the widow died before Helene, the share of income the latter would have been entitled to receive would have been larger in amount because of the increase in the fund by reason of the addition of the homestead or the proceeds of its sale and of the termination of the right of the widow to receive income, and had Mary survived her mother the increased income would at the latter's death have been equally divided between Mary and Jean. Helene's interest would, however, have retained its essential nature of a right, subject to certain limitations, to receive all the income of the fund not given to others. On Helene's death, one-half of this interest passed to her daughter Jean, and, on the widow's death, this one-half will presumably be increased in amount owing to the augmented income of the estate. The disposition of the other one-half interest, to which Mary would have been entitled had she lived, is determined by the provisions of sub-paragraph 10. For the reasons we have stated, this paragraph fails to dispose of so much

of the principal of the fund as is represented by the increase of income which would have come to Mary upon the widow's death, had Mary lived; and that portion of the fund will then be intestate property, at once distributable as such.

The testator's granddaughter Jean and her children further ask us to advise whether or not any of the testator's heirs to whom he gave a life use of the income are precluded from participating in the distribution of the intestate property. The claims for relief in the complaint serve to characterize this action as one seeking a construction of a will. Practice Book, Form 504. We cannot consider this request for advice, for two reasons: it is not included in the questions propounded in the stipulation for the reservation; and it pertains, not to a construction of the will, but to the rights of certain heirs of the testator to share in the distribution of the intestate portion of the estate, and the question is not one which falls within the issues which can properly be presented in an action seeking merely a construction of the will. *Carpenter* v. *Perkins*, 83 Conn. 11, 19, 74 Atl. 1062; *Gillette* v. *Stewart*, 108 Conn. 611, 618, 144 Atl. 461; and see *Home Trust Co.* v. *Beard*, 116 Conn. 396, 398, 400, 165 Atl. 208; *Central Hanover Bank & Trust Co.* v. *Mason*, 129 Conn. 350, 354, 27 Atl. (2d) 797.

In answer to the first question propounded, asking whether the hospitals have any interest in the three-fifths portion of the principal which, on John's death, would have been paid to his issue had he left any, and, if the hospitals are not entitled to it, as to the proper disposition of it, we advise that one-half of this portion of the principal remains in the trust, augmenting the share of income payable to Jean Warren Southack, and the other one-half of this portion is to be presently distributed as intestate estate. In answer to

similar questions asking as to the disposition, upon the death of the testator's widow, of the homestead or the proceeds of its sale, of which she had the life use, and of the portion of the principal of which she is now receiving the income, we advise that at her death so much of the principal as represents a half interest therein will become intestate property, at once distributable as such, and so much of the principal as represents the other half interest will remain as an integral part of the trust fund.

No costs will be taxed in this court for or against any party.

In this opinion the other judges concurred.