George S. Willis et al., Trustees (Estate of Friend A. Russ) *v.* John G. Keenan et al., Administrators c.t.a. (Estate of John J. Keenan), et al.

Inglis, C. J., Baldwin, Wynne, Daly and Covello, Js.

Argued October 3—decided November 6, 1956

*Edward J. Donahue,* for the plaintiffs.

*Joseph L. Melvin,* for the named defendant et al.

*Louis Weinstein,* with whom was *Josef A. Weinstein,* for the defendants Jean W. Southack et al.

*Harold E. Drew,* for the defendants Griffin Hospital et al.

BALDWIN, J. This is a reservation from the Superior Court in which the plaintiffs, trustees, seek an interpretation of the will of Friend A. Russ relating to the disposition, on the happening of certain contingencies, of assets in their hands. The will

has been before this court on two previous reservations, on which the questions then requiring its interpretation were answered.[1] The principles thus established must, in large part, shape the mold in which our advice is cast in the instant reservation.

The testator, Friend A. Russ, a resident of this state, died in Greenwich on November 9, 1933. His will, dated September 5, 1933, was admitted to probate in the Probate Court for the district of Greenwich. He was survived by his widow, Ada S. Russ; a son, John B. Russ; a daughter, Helene Russ Warren; and her two children, Mary Warren Horton and Jean Warren Southack. Ada S. Russ was his second wife. By reason of an antenuptial agreement, she was precluded from inheritance as an heir at law. The present action was brought against the following defendants: John G. Keenan and Joseph A. Keenan, Jr., administrators c.t.a. of the estate of John J. Keenan, who was the residuary legatee under the will of Helene Russ Warren; Jean Warren Southack and J. Albert Hughes, guardian ad litem for Mrs. Southack's issue; Carrie A. Rice, who has died since the action was started, and Amigh Jeandheur, each of whom was given an income for life under the will; Alice W. Russ Cochran, widow of John B. Russ and executrix under his will; and the United Hospital Fund of New York City and the Griffin Hospital of Derby, Connecticut, which will be referred to hereinafter as the hospitals and which were named beneficiaries under two provisions of the will.

Relevant portions of the will were summarized in a footnote to our opinion in *Willis* v. *Hendry*, 127

[1] *Willis* v. *Hendry*, 127 Conn. 653, 20 A.2d 375; 130 Conn. 427, 35 A.2d 207.

Conn. 653, 656, 20 A.2d 375. We shall detail here only the portions pertinent to the present inquiry. In his will the testator gave his dwelling house in Greenwich and its premises and furnishings to trustees to hold for the use of his widow during her life. At her death this property was to become a part of the residuary estate, to be disposed of as such. The resolution of the questions now presented turns on the interpretation of article ninth of the will, which provided for the disposition of the residuary estate. This article created a trust. In paragraph A the testator provided for annuities for four persons. Two of these died before this action was begun; one, Carrie A. Rice, has since died, and a fourth, Amigh Jeandheur, now upwards of seventy-four years of age, is still living. The full amounts of the annuities to these persons, who shall be hereinafter referred to as the annuitants, were to be paid only if the entire net income from the residue disposed of in article ninth was at least $55,000 annually; if it was not, the amount paid to each annuitant was to be reduced proportionately. Upon the death of each of these persons, "the principal of the fund . . ., the income of which such beneficiary was entitled to receive, [was to] remain part of [the] residuary estate and be disposed of in accordance with the following provisions of [the] will."

In paragraph B of article ninth, the testator gave his widow, Ada, for her life, 30 per cent of "the entire net income" of the trust, with the proviso that the amount paid to her should be no more than $25,000 in any one year. Upon her death, "the principal fund so held in trust, the income of which [she] was entitled to receive, [was to] remain part of [the] residuary estate and be disposed of as such in accordance with the provisions of" article ninth.

In paragraph C of article ninth, the testator gave to his son, John, "an annual income of thirty per cent ... of the entire net income or such part thereof" as the trustees might deem necessary for his support, having in mind the manner and station in life in which he had theretofore been supported, but not more than $25,000 in any one year. Any balance of income not deemed necessary for his support during any calendar year was to be accumulated and retained by the trustees during his life and paid to him if they deemed it necessary for his support. At his death, any accumulated income was to become a part of the principal of the trust. Upon John's death or the death of the testator, if John predeceased him, two-fifths of the income John would have been entitled to receive was to be paid to his widow for her life, if she was living with him at the time of his death. Upon the death of John's widow, this two-fifths of John's income was to be paid to John's lawful issue for twenty-one years, and thereafter John's issue were to receive "the principal of the trust fund, the income of which [John's widow] would have been entitled to receive." If, upon the death of John's widow, there were no lawful issue of John then surviving, "the principal of the trust fund, the income of which [John's widow] would have been entitled to receive [was to] be added to and form a part of the trust created by . . . paragraph D of [article ninth] and [was to] be held and disposed of in accordance therewith." The disposition of the remaining three-fifths of John's share of the income and, ultimately, of a corresponding part of the principal was similar, except that there was no provision for John's widow and therefore there was no postponement until her death of the payment to John's issue or the addition of the principal to that

provided for under paragraph D of article ninth.

In paragraph D of article ninth, the testator bequeathed to his daughter, Helene, for life "all or such part of the entire remainder of said income (which income may from time to time be increased by the death of various legatees as herein provided)" as the trustees might deem necessary for her support, as well as any portion of the remainder which the trustees might retain in any year or years, they to have in mind in determining the amount necessary the manner and station in life in which Helene had theretofore been supported. At her death, any accumulated income was to become a part of the principal of the trust. The testator then provided that "upon the death" of Helene, or upon his death if she predeceased him, the trustees should pay "said income . . . which Helene Russ Warren would have been entitled to receive as follows: One-half thereof to my granddaughter, Mary Warren Horton, during her natural life and one-half thereof to my granddaughter, Jean Warren, during her natural life." Here again the testator left to the trustees' discretion the amount of the income to be given to each grandchild for her support, any portions retained by the trustees to be accumulated and later paid to her, if necessary. At the death of the grandchild, any accumulated income was to "be and become part of the principal of the trust funds held in trust . . . for such grandchild." Upon the death of each grandchild, or, if she predeceased the survivor of the testator and Helene, upon the death of that survivor, the principal representing the grandchild's income was to be paid to her issue then surviving. If she left no issue and did not exercise a power of appointment given by the will, the principal representing her income was to be paid one-half to the United Hospi-

tal Fund of New York City and one-half to the Griffin Hospital of Derby, Connecticut.

Article ninth contains this provision, which we quote in full: "Anything hereinbefore to the contrary notwithstanding, if, after the death of my wife and my said daughter the principal of the Trust fund created by [paragraph D of article ninth] exceeds the sum of One Million Dollars, I direct my trustees to set aside as a separate fund, the portion of such trust fund in excess of One Million Dollars, but in no event more than Two Hundred Thousand ($200,000) Dollars, and I direct my Trustees to pay said separate fund as follows: One-half thereof to the United Hospital Fund of New York City or its successors for the uses and purposes of said corporation and the remaining one-half to Griffin Hospital of Derby, Connecticut, or its successors."

On August 26, 1935, Mary Warren Horton, one of the two granddaughters, died without issue and without having exercised her power of appointment. On April 4, 1939, Helene Russ Warren, the daughter, died. She left a will in which she designated Elizabeth G. Hendry, the named defendant on the two previous reservations, as her executrix and John J. Keenan as her sole residuary legatee. John J. Keenan's estate is now represented by the defendants John G. Keenan and Joseph A. Keenan, Jr., as administrators c.t.a. Helene's estate is not otherwise represented in this action.

After Helene's death the trustees brought an action to construe this will. *Willis* v. *Hendry,* 127 Conn. 653, 20 A.2d 375. As a result of the opinion of this court in that case, the trustees, out of a corpus having a market value of $1,223,518.52, paid over to the hospitals, in equal shares, assets having a market value of $244,703.70. This amount represented that

part of the trust fund the income of which Mary would have received if she had survived her mother, Helene. This distribution was set forth in an accounting which was filed by the trustees in the Probate Court and which, after due notice, was ordered accepted by the court. No appeal from the order was taken. One of the questions reserved in the suit for construction was whether the executors and trustees should set up separate trust funds, out of the proceeds of which the gifts of income made in article ninth should be paid. We concluded (p. 662) that the will manifested an intent that the residue should be held as a single trust rather than as several trusts. We held further (p. 666) that the testator clearly contemplated that the hospitals might become entitled to the shares of the principal represented by the gifts of income given to his granddaughters Mary and Jean even as early as his own death, for the will specifically so provided, and we concluded that the hospitals were entitled to have Mary's share distributed to them forthwith.

The distribution of $244,703.70 to the hospitals presented a problem with reference to the limitation on the amount of income payable to the annuitants, who, it will be remembered, were required to suffer a reduction in income unless the annual net income of the trust was $55,000 or more. The distribution also created the problem of how the amounts of income payable to the surviving life tenants were to be determined, since those amounts were to be certain percentages of the income of the entire trust fund. With reference to this matter we held (p. 668) that the relative amounts to be paid those who were to receive the income should not be affected by the distribution of a portion of the fund. To give proper effect to the provision that if the total net income

from the trust was not at least $55,000, the gifts to the annuitants were to be reduced, and to determine what was properly to be regarded as 30 per cent of the net income, the amount Ada and John were each to get, we evolved a formula whereby there was added to the income actually received from the trust after the distribution to the hospitals a sum representing the income which would have been received had the portion distributed been retained as a part of the trust. The income of the fund was to be regarded as the total of the amount actually earned by the portion remaining in it and this additional sum. The amount of this additional sum was to be determined by ascertaining the rate of income upon the portion of the fund remaining in the trust immediately after the distribution to the hospitals which would produce the income actually earned by the fund left in the trust, and by applying that rate to the portion of the fund distributed as of that date. From the amount of the total income as thus ascertained there were to be deducted the charges of the trustees. After that deduction, the balance would represent the total net income upon the basis of which it would be determined whether, as regards the annuitants, the annual net income was at least $55,000, and what amounts Ada and John were entitled to. The balance of the net income actually earned was then to be paid to Jean, the surviving granddaughter. We said (p. 669): "The determination of the payments of income in this way does not run counter to the testator's intent as expressed in the will, but as nearly as may be effectuates the plan he had in mind. We applied a like method in *First National Bank & Trust Co.* v. *Baker,* 124 Conn. 577, 594, 1 Atl. (2d) 283."

To recapitulate briefly, Mary, one of the grand-

daughters, having predeceased her mother, Helene, without issue and not having exercised her power of appointment, and Helene, the daughter of the testator, having died, the specific provision for the final disposition of the one-half of Helene's share which the will gave for the benefit of Mary after Helene's death became operative. Further, Helene having died, the other one-half of the principal from which her income was derived was continued in the trust to provide the income to which Jean was entitled.

John B. Russ died testate on September 20, 1942. He left no issue but was survived by his widow, Alice, who is his executrix and sole heir and legatee. After his death, the trustees brought a second action for the interpretation of the will. *Willis* v. *Hendry,* 130 Conn. 427, 35 A.2d 207. As a result of our advice in that case, assets constituting three-fifths of the principal representing the income which had been payable to John, or 18 per cent of the value of the corpus of the trust as adjusted by the formula hereinbefore referred to, were disposed of as follows: One-half, or 9 per cent of the corpus, was divided between the estates of Helene and John as intestate estate. Certain accumulated income was distributed in like manner and proportion. The other one-half of this three-fifths, or 9 per cent of the corpus, was continued in the trust under paragraph D of article ninth for the benefit of Jean. At this time the corpus of the trust created under article ninth had a market value of $974,987.44. This figure, when adjusted by the use of the formula laid down heretofore, became $1,170,836.26. The remaining two-fifths of John's share, or 12 per cent of the assets of the corpus, was retained in the trust under paragraph C of article ninth for the benefit of John's widow, Alice. An accounting was filed in the Probate Court which,

after due notice, was approved and accepted by the court, and no appeal was taken.

The testator's widow, Ada S. Russ, died on January 22, 1948. After her death, the trustees, acting pursuant to the principle enunciated in *Willis* v. *Hendry,* 130 Conn. 427, 35 A.2d 207, filed an accounting in which they showed distribution of the principal representing the 30 per cent of the net income of the trust payable to Ada, together with the proceeds from the sale of the house in Greenwich, the life use of which had been given her, as follows: One-half, as intestate estate, was divided between Joseph A. Keenan, who was then the executor of the estate of John J. Keenan, the sole legatee of Helene,. and Alice W. Russ Cochran, the executrix of the estate of John. The other one-half was added to the portion of the trust being administered under paragraph D of article ninth for the benefit of Jean. At the time of this distribution, the corpus of the trust had a market value of $867,729.02. This figure, when adjusted in accordance with the formula hereinbefore stated, became $1,169,732.69. The accounting was approved by the Probate Court after due notice, and no appeal was taken.

The survivors of the testator referred to in paragraphs B, C and D of article ninth, with the exception of Alice, widow of John, and Jean, daughter of Helene, were now all deceased. Alice was entitled under the will to only two-fifths of the income payable to John, and Jean was entitled to one-half of the income payable to Helene, while the principal representing Jean's income was ultimately payable to her issue or, if there were none, to her appointees or, in default of issue or appointment, to the hospitals. In answer to the claim of the hospitals, made on John's death, that they were entitled to one-half

of the three-fifths of the principal representing the income payable to John, we had said in *Willis* v. *Hendry,* 130 Conn. 427, 435, 35 A.2d 207, that there was a complete lack of any provision that the hospitals should take, at any time other than upon the death of the survivor of Mary and Helene, the portion of the principal the income from which Mary would have received had she survived. We therefore held that so much of the principal as represented one-half of the three-fifths of the income payable to John should be distributed as intestate estate, and the remaining one-half should be kept in trust for Jean's benefit. Likewise, at the death of Ada, one-half of the proceeds of the sale of the house in Greenwich of which she had the life use, as well as one-half of the principal from which she had been receiving the income, further augmented the principal earning income for Jean. The other one-half of the principal from which Ada had been receiving the income and the other one-half of the proceeds of the sale of the homestead were distributed as intestate estate, because paragraph D of article ninth failed to provide for their disposition.

The annuitants named in paragraph A of article ninth having died, with the exception of Amigh Jeandheur, the trustees now seek advice as to the disposition of the portion of the principal represented by the income payable to annuitants. The specific questions asked are set forth in the stipulation for reservation as Part II (1) (a), (b), (c) and (d).[2] Paragraph A of article ninth states that on

---

[2] "(a) Does the Estate of John J. Keenan, beneficiary under the will of Helene Russ Warren, have any interest in the principal of the trust fund from which Annie Barrie and Carrie F. Martin had income, and if so what is that interest and should any distribution be made thereof to it at the present time, and does the same rule apply upon

the death of each of the annuitants "the principal of the fund so held in Trust, the income of which such beneficiary was entitled to receive, shall remain part of [the] residuary estate and be disposed of in accordance with the following provisions of [the] Will." The defendants Keenan claim that on the death of each annuitant the principal which represented her annuity was immediately transferable to the portion of the trust governed by paragraph D of article ninth, one half to be held for Jean and her branch of the family, and the other half to be distributed as intestate property. It should be noted here that while the defendant Alice Russ Cochran recognizes that her position with respect to this claim is identical with that of the defendants Keenan, she is not pressing for any distribution at this time.

The defendants Southack, on the other hand, claim that the defendants Keenan and the defendant Alice Russ Cochran have no interest in the principal representing the annuities for the following reasons: While the will provided that a specific

---

the death of the now living annuitants?

"(b) Does Alice W. Russ Cochran, individually, or as Executrix of the estate of John B. Russ, have any interest in the principal of the trust fund from which Annie Barrie and Carrie F. Martin had income, and if so what is that interest and should any distribution be made thereof to her at the present time, and will the same rule apply upon the death of the now living annuitants?

"(c) Does all of said principal which supplied income for Annie Barrie and Carrie F. Martin remain in the residuary estate under Ninth D, with the income therefrom to be paid to the granddaughter Jean Warren Southack for her life, with eventual distribution to her surviving issue or testamentary appointee, as the case may be, and will the same rule apply upon the death of the now living annuitants?

"(d) Does the principal of the trust fund which supplied income for Annie Barrie and Carrie F. Martin, as well as the now living annuitants remain intact until the death of the last annuitant, and if so what distribution should be made at that time, and will the same rule apply upon the death of the now living annuitants?"

percentage of the entire net income should be paid to Ada and to John respectively, the amount payable to Helene was described only as "all or such part of the entire remainder of said income . . .," which remainder, roughly estimated to be 40 per cent, was subject to the payment of the annuities under paragraph A of article ninth. On Helene's death the payment of these annuities would have become a charge upon the respective halves passing to Mary and Jean. The untimely death of Mary, however, precipitated a series of events which resulted in a distribution of Mary's share, at the death of Helene, to the hospitals. Consequently, the payment of the annuities fell upon the portion of the income payable to Jean. In other words, since the income paid the annuitants was, in the beginning, earned by principal which otherwise would have produced income for Helene, the distribution, on Helene's death, of one-half of the principal which had yielded income to Helene and the annuitants placed the entire subsequent burden of the annuities on Jean's share. Therefore, if one-half of the principal which represents the income payable to the annuitants were distributed as intestate estate, Jean and those who take under her would be in a position inferior to that which Mary and those taking under her would have occupied had Mary lived. Such a result, the defendants Southack say, was never intended by the testator.

It is significant that in *Willis* v. *Hendry,* 127 Conn. 653, 666, 20 A.2d 375, we took notice of the claim of the hospitals that two separate trust funds should be established from the principal which had produced income for Helene and the annuitants. These trust funds, the hospitals conceded, would each be subject to the payment of one-half of the annuities. We

said: "The question arises whether [the hospitals] are entitled to immediate distribution of [the] portion of the principal of the fund [representing Mary's share on Helene's death]. Basing their position upon the setting up of separate trusts, they claim an immediate distribution of only so much as will leave in the trust under [paragraph D] a fund sufficiently large to pay one-half the gifts of income in [paragraph A], but our conclusion that separate trusts should not be established removes the basis of that claim." And again (p. 667), we said in effect that the hospitals could not be charged with any of the income to the annuitants, for that would "clearly derogate from the nature of the gifts which the clear intent of the testator expressed in the will makes absolute."

Our task then with respect to the questions propounded is to determine and effectuate the intent of the testator. *Union & New Haven Trust Co.* v. *Sullivan,* 142 Conn. 685, 691, 116 A.2d 908. As has just been stated, we decided in *Willis* v. *Hendry,* 127 Conn. 653, 666, 20 A.2d 375, that it was the testator's intent to make an absolute gift to the hospitals of one-half of the principal representing the income payable to Helene. This was in effect a determination that, although before Helene's death the income payable to the annuitants had come from her share, thereafter that burden would fall on Jean's half alone. The will shows that the testator contemplated that while Helene's share of the income was basically 40 per cent less the annuities, the amount would increase. The testator clearly understood this, for in giving the remainder of the income to Helene he said, ". . . which income may from time to time be increased by the death of various legatees." Then too, the will provided that any income

accumulated from the shares of John and Helene was, on their death, to become part of the principal of "the trust funds held in trust under this . . . will." It was apparently his thought that any lessening of Helene's share, or, ultimately, of the shares going to Mary and Jean, would be compensated by these increases. He could hardly have contemplated that Mary, his granddaughter, would predecease all his other beneficiaries, who belonged to groups which in some instances were two generations, and in others one, older than Mary and Jean. Therefore, he must have assumed that the principal which originally represented the income payable to the annuitants would remain in the trust until the full purpose of the trust was fulfilled and that thereafter the corpus of the trust would be distributed as the will directs. After the death of the last annuitant and of Alice Russ Cochran, leaving Jean surviving, and after the distribution of the portion of the principal which will on the death of Alice become distributable, there will be no principal in the trust fund yielding income for anyone except Jean. The remaining principal will be ultimately distributable to Jean's issue or appointees, unless she dies without issue and without exercising her power of appointment. The estates of Helene and John can have no interest in the principal representing the annuities.

We come now to the questions which concern the disposition of that part of the principal which represents the two-fifths of John's share of the net income (which was, it will be remembered, 30 per cent of the entire net income earned by the principal of the trust) payable to his widow, Alice, for life. The specific questions are set forth in the stipulation for reservation as Part II (2) (a), (b) and

(c).[3] Since only one-half of the principal representing income payable to John could, in the event of his death without issue after the death of Helene, eventually go to the benefit of Jean, and since no provision was made in the will for the disposition of the other half, which Mary would have had the benefit of had she lived, we previously held that, on John's death, one-half of the three-fifths portion of the fund for John which was not continued in trust for John's widow became intestate property. *Willis* v. *Hendry,* 130 Conn. 427, 438, 35 A.2d 207. That part of John's share which represents the income payable to Alice for life (two-fifths of John's 30 per cent) falls into the same category and, on Alice's death, half of it should be distributed as intestate estate. The other half should continue in the trust for the benefit of Jean. It may be helpful to repeat here that the hospitals can have no interest in what may be called Mary's one-half share of this part of the estate, because the intent expressed in the will was that they should not take except upon the death of Mary or, if she predeceased the survivor of Helene and the testator, upon the death of

---

[3] "(a) Will the estate of John Keenan, beneficiary under the will of Helene Russ Warren, have any interest in the two-fifths of that portion of the principal of the trust fund from which Alice W. Russ Cochran, widow of John B. Russ, had income during her lifetime, and if so what is that interest and should any distribution be made at that time?

"(b) Will the estate of Alice W. Russ Cochran have any interest in that portion of the two-fifths of the principal of the trust fund from which Alice W. Russ Cochran, widow of John B. Russ, had income during her lifetime; and if so what is the interest and should any distribution be made at that time?

"(c) Does the said two-fifths of that portion of said principal remain in the residuary estate, with income therefrom to be paid to the granddaughter, Jean Warren Southack, for her life, with eventual distribution to her surviving issue or testamentary appointees, as the case may be?"

the survivor of those two. In short, the hospitals could take only that one time. *Willis* v. *Hendry*, 130 Conn. 427, 434, 35 A.2d 207.

Claims are advanced by the Keenan and Southack interests, the one that the hospitals received too much, and the other that Jean Warren Southack, having borne the payment of the income to the annuitants, received not enough. It is a sufficient answer to state that the distribution which it is claimed accomplished these inequalities was the result of orders entered by the Probate Court after due notice and hearing, and without objection or appeal, and the matter must therefore be considered as res judicata in this action. General Statutes § 6817; *Miller* v. *McNamara*, 135 Conn. 489, 495, 66 A.2d 359; *Hotchkiss' Appeal*, 89 Conn. 420, 432, 95 A. 26.

The third series of questions, set forth in the stipulation for reservation as Part II (3) (a) and (b),[4] deals with the provision of the will which states, in substance, that if after the death of the testator's widow and his daughter the trust fund created by paragraph D of article ninth exceeds $1,000,000, the trustees are to set aside as a separate fund so much of the excess as does not exceed

---

[4] "(a) As of what date or dates should it be ascertained whether the principal of the trust exceeds one million ($1,000,000) Dollars, so as to make effective the contingent gift to the United Hospital Fund and Griffin Hospital contained in the fourth from the last paragraph of the Ninth clause of the will of said deceased?

"(b) In ascertaining whether the principal of the trust fund exceeds one million dollars ($1,000,000) and the further limitation of two hundred thousand ($200,000) dollars on said excess, should there be added to the amount of the principal of the trust the distributions previously made from the trust in the same manner as advised by the court in said reported opinion of the Supreme Court of Errors appearing in Vol. 127, pages 653-668, for ascertaining the fifty-five thousand dollars limitation on minimum net income in connection with the gifts of income to the annuitants, so called?"

$200,000 and pay it to the hospitals. The hospitals claim that by using the words "after the death of my wife and my said daughter" the testator expressed an intent that if at any time or times thereafter the principal of the trust exceeds $1,000,000, the hospitals are to receive the excess stated. Upon this view it is conceivable that there could be one or more occasions for distributing excess principal. The hospitals also claim that in determining the total of the trust fund for this purpose the amounts of the previous distributions should be added in accordance with the formula. Taking the latter claim first, we conclude that it is not tenable because there is nothing in the will to indicate that the testator contemplated the use of any such formula. Instead, the formula was evolved by the court merely as a method of determining, after the distribution to the hospitals, whether the total net income was less than $55,000, in which event the annuitants were to have their payments reduced proportionately, and what amounts were to be paid to Ada and John, each of whom was to receive 30 per cent of the entire net income. We said in *Willis* v. *Hendry,* 127 Conn. 653, 669, 20 A.2d 375: "The determination of the payments of income in this way does not run counter to the testator's intent as expressed in the will, but as nearly as may be effectuates the plan he had in mind." We were then speaking of payments of income. To use this method in fixing the amount of the total principal of the trust, as urged by the hospitals, in order to make a further distribution to them would give that principal a fictitious value and would result in a distribution of excess principal which does not in fact exist.

As to the other claim of the hospitals, the testator's interest in them was evidenced by his mention

of them in two distinct connections as the recipients of his bounty. It is a reasonable supposition that the gift to them which would be effectuated only in the event of the deaths of one or the other or both of his granddaughters, Mary and Jean, without issue and without exercising their powers of appointment, was considered by him a remote possibility. Therefore, he made a second provision in their favor which gave them a maximum of $200,000 of the principal of the trust in the event that the portion of the principal administered under paragraph D of article ninth exceeded $1,000,000 after the death of Ada and Helene. This eventuality could have been considered by him as reasonably probable. However, Mary predeceased both Helene and Ada, and the provision of paragraph D of article ninth bequeathing one-half of the principal representing income payable to Helene applied. This court held that the hospitals were entitled to the immediate distribution of the one-half of Helene's interest which would have been for the benefit of Mary had she survived. Thus the provision which appeared at the death of the testator of improbable operation did become effective and resulted in a distribution to the hospitals of $244,703.70.

The testamentary plan and the language which the testator used, to wit, "if, after the death of my wife and my said daughter the principal of the Trust fund . . . exceeds" $1,000,000, make his intent apparent. He could reasonably anticipate that the fund created by paragraph D would be increased if the annuitants, or any of them, or his widow or his son predeceased his daughter, Helene. He was willing that Helene should enjoy the increased income for her life, because he placed no limiting figure on the amount she was to receive, as he did

in the case of his widow and his son. There is nothing to show an intent that Helene's daughters, Mary and Jean, or their issue or appointees, were to receive this increased income. In fact, the opposite intent is manifest, because it is after the death of the widow and the daughter that the hospitals are to receive the $200,000 excess. Had it not been for the death of Mary before Helene, the fund created by paragraph D, would have, after the death of Ada and Helene, contained Mary's share, which, as noted heretofore, was distributed to the hospitals. The language used by the testator connotes only one occasion as of which the hospitals might be entitled to the excess. That occasion would be the death of the survivor of Ada and Helene. As of that time it would be determined whether the accretions to the fund created in paragraph D of article ninth, notably that resulting from Ada's death, brought the fund above $1,000,000. After Ada's death the corpus of the trust had a market value of $867,729.02, having already been reduced by the $244,703.70 distributed to the hospitals and the $105,375.26 distributed as intestate estate. Furthermore, if the testator had intended that the payment should be made on any occasion other than the death of the survivor of Helene and Ada, it is extremely likely that instead of the word "if" in the provision of the will giving the excess to the hospitals, he would have used "whenever" or "if, from time to time." We conclude, therefore, that the testator intended that the hospitals should not take any part of the excess above $1,000,000 except upon a single occasion, the death of the survivor of Ada and Helene.

We call attention to the fact that the executor or administrator of the estate of Helene Russ Warren

has not been made a party to this action. Since the administrators c.t.a. of the estate of her sole residuary legatee, John J. Keenan, have been made parties, and since the conclusions we have reached are largely to the advantage of her estate, we have been willing to announce our construction of the will. *Hartford-Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 557, 107 A.2d 409. Inasmuch as her interest in the intestate portion of the principal of the trust under consideration vested in her, as an heir at law of her father, prior to her death, her share of the fund will have to be distributed to her estate. *Hartford-Connecticut Trust Co.* v. *Hartford Hospital,* 141 Conn. 163, 175 (rescript), 104 A.2d 356; see *Hartford-Connecticut Trust Co.* v. *Gowdy,* supra. Consequently, her executor or administrator is a necessary party to this action. Similarly, the distribution of John B. Russ's share of the intestate portion of the trust should run to his estate rather than to his widow as his sole legatee.

We also call attention to the fact that four of the questions reserved, namely, questions (1) (a) and (b), and questions (2) (a) and (b), are framed on the assumption that distribution of the shares of Helene and John in the intestate portion of the trust will be made to their distributees rather than to their estates. For this reason and for the further reason that yes and no answers to some of the questions cannot be made without making certain assumptions as to future events, we find ourselves unable to answer all of the questions categorically. Question (1) (c), for example, is framed on the assumption that Jean will survive the last annuitant and will either leave issue or exercise her power of appointment.

In answer to the questions identified as (1) (a)

and (b) of Part II of the stipulation for reservation, asking, in substance, whether the estates of Helene Russ Warren and John B. Russ have any interest in the principal which supplied income for the deceased annuitants and which is supplying income for the surviving annuitant, we advise that they have no interest. In answer to questions (1) (c) and (d), asking, in substance, what disposition should be made of the portion of the principal of the trust which supplied income for the three deceased annuitants, and whether a similar disposition should be made at the death of the surviving annuitant of the principal supplying income to her, we advise that as long as Jean Warren Southack is living the principal so identified should remain part of the principal supplying income to her. In answer to questions (2) (a), (b) and (c), asking, in substance, what disposition should be made, on the death of Alice W. Russ Cochran, of the portion of the principal yielding income to her, we advise that, on the death of Alice W. Russ Cochran, one-quarter of that portion (representing 3 per cent of the original corpus of the trust) should be distributed to the estate of Helene Russ Warren and one-quarter to the estate of John B. Russ, and, if Jean Warren Southack is then living, the remaining one-half should continue in the trust to provide further income to her. Our answers to the remaining questions are as follows: (3) (a) Immediately after the death of Ada, Helene having predeceased her. (3) (b) No.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.